# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KELLY A. SHARP** | **NO. 1:11-CV-1262** |
| | |
| **v.** | **CHIEF JUDGE KANE** |
| | |
| **PENNSYLVANIA ARMY** | **MAGISTRATE JUDGE METHVIN** |
| **   NATIONAL GUARD** | |
| **CINDY DWYER** [1] | |
| **WILLIAM CHARPENTIER** | |
| **PAOLA SICA** | |
| **RONALD TIPA** | |
| **MILITARY PERSONNEL SERVICES** | |
| **   CORP.** | |

## REPORT AND RECOMMENDATION
## ON MOTIONS TO DISMISS
### (Docs. 14, 16)

Kelly Sharp filed this civil rights action on July 5, 2011 (Doc. 1), and

thereafter filed an amended complaint on September 20, 2011 (Doc. 12). The

amended complaint alleges constitutional violations, *to wit.*, free speech under the

First Amendment; due process liberty interest(s) under the Fifth Amendment, and

equal protection under the Fourteenth Amendment. Sharp brings claims under

Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. and 42 U.S.C. § 1983,

as well as state law claims for interference with contractual relations and

defamation.

---

[1] Although plaintiff failed to specifically identify Dwyer as a defendant in the Amended
Complaint (*see* Doc. 12, ¶¶ 6-12 ), it is clear that Dwyer is a defendant, as plaintiff
certified service of the Amended Complaint upon her, and she filed a motion to dismiss.

2

Defendants fall into two groups: the "Pennsylvania defendants" include the Pennsylvania Army National Guard (PAARNG); Cindy Dwyer, a Colonel in the PAARNG, William Charpentier, a Major in the PAARNG; and Paola Sica, a Captain in the PAARNG. The "MPSC defendants" include Military Personnel Services Corporation ("MPSC") and Ronald Tipa.

The allegations of the amended complaint are based on Sharp's employment with MPSC, her former employer, which had a contract with PAARNG.

The amended complaint alleges four counts:

**Count I**:  Intentional interference with plaintiff's contractual relations with MPSC (*Dwyer, Charpentier, Sica in their individual capacities*)

**Count II:**  Defamation (*Dwyer, Charpentier and Sica in their individual capacities*)

**Count III:**  Constitutional violations including free speech, substantive due process and equal protection under §1983 (*all defendants*)

**Count IV:**  Title VII violations (*all defendants*)

3

Before the court are defendants' motions to dismiss.[2] The motions have been referred to the undersigned for a report and recommendation and are now ripe for disposition.[3]

## FINDINGS AND RECOMMENDATIONS

### I. Background

For purposes of the motion to dismiss, Sharp's factual averments will be accepted as true. Sharp makes the following allegations in her amended complaint:

Sharp was employed by MPSC from September 29, 2009 to July 19, 2010. (Doc. 12 at ¶ 13). MPSC had a contract with PAARNG to provide personnel support services in the State Family Program Office. (*Id.* at ¶ 14). MPSC provided these services through Family Assistance Centers (FAC's) throughout the state, where soldiers and their families could obtain information and support with respect to military, federal, state, and local resources, including financial and legal

---

[2] The Pennsylvania defendants filed the motion to dismiss on October 6, 2011, along with a supporting brief (Docs. 14, 15). MPSC defendants also filed a motion to dismiss and a supporting brief on October 6, 1011. (Docs. 16, 17). Sharp filed a brief in opposition to both motions on October 27, 2011 (Doc. 20), to which defendants filed a reply briefs on November 10, 2011 (Docs. 22, 23).

[3] On October 18, 2011, Chief Judge Kane referred the pending motions to dismiss to undersigned. (Doc. 19).

4

resources, crisis intervention, ID cards, and community information and outreach (*Id.* at ¶ 16).

Sharp was hired to work as Family Assistance Center Coordinator (FACC) in the State Family Program Office in Annville, Pennsylvania. (*Id*. at ¶ 15). In this capacity, Sharp supervised all specialists working in the FAC's statewide, including approving time and attendance, evaluating performance and serving as a liaison between PAARNG members and FAC's.

Although she was employed by MPSC, Sharp worked under the direct supervision of the State Family Program Director, Capt. Quinn, who was a PAARNG member. (*Id*. at ¶¶ 18, 20). She also received direction from Quinn's supervisor, Major Charpentier. (*Id*.).

Until August 2010, Colonel Cindy Dwyer was the G-1 personnel manager of the Joint Force Headquarters, which had the overall responsibility for the Family Assistance Centers. (*Id*. at ¶ 19). Dwyer was the immediate supervisor of Charpentier and also had supervisory responsibility over Captain Sica. (*Id*.). In July, 2010, Sica became the State Family Program Director, replacing Quinn. (*Id*. at ¶ 20).

In March, 2010, Sharp discovered billing irregularities where MPSC had billed PAARNG at a higher rate than was contractually agreed for specified MPSC

employees. (*Id*. at ¶ 21). Sharp reported these irregularities to Sandy Hintz, the program manager at MPSC who, in turn, stated she would notify Ronald Tipa, MPSC's principal and corporate officer. (*Id*. at ¶ 22). Hintz also informed Sharp that Tipa would handle the matter directly with Dwyer and that Sharp need not pursue the matter further. (*Id*. at ¶ 23).

In April, 2010, Dwyer called Sharp into her office to inquire about the performance of Quinn. (*Id*. at ¶ 25). Dwyer disagreed with Sharp's complimentary characterization of Quinn's performance. (*Id*.). About this time, Dwyer applied for a position as chief of staff of PAARNG, and was interviewed by a panel.  (*Id*. at ¶¶ 26, 27). Dwyer was not selected for the position. (*Id*. at ¶ 28). Sharp alleges that Dwyer blamed Deborah Stubljar, Sharp's sister and a member of the interview panel, for not being selected. (*Id*.).

In May, 2010, Quinn informed Sharp that Dwyer and Charpentier were circulating rumors that Sharp and Quinn were having an affair. (*Id*. at ¶ 29). Sharp alleges that Dwyer relayed the rumor to parties in the PAARNG as well as staff at the Family Assistance Center. (*Id*. at ¶ 30). Although she complained to Hintz, Sharp contends that MPSC failed to take any action. (*Id*. at ¶ 31). Quinn was notified in May, 2010 that he was going to be removed as State Family Program director and, on July, 1, 2010, Sica assumed that position. (*Id*. at ¶¶ 32, 33). Sharp

maintains that Sica refused to interact with senior ranking non-commissioned officer (NCO) Sergeant First Class Ellen Huff, an E-7, and only spoke directly to lower-ranking male enlisted personnel. (*Id.* at ¶ 35). When Huff attempted to speak with Sica, he replied with words to the effect, "is there some reason you're speaking to me?" (*Id.*). Sica also spoke openly and derogatorily of another female lieutenant, remarking on the size of her mouth, her allegedly having performed oral sex on two (2) men at once, and the race of her child. (*Id.* at ¶ 36). Sica was heard to state that a female employee dressed like a "whore," and repeatedly addressed a blonde female civilian staff member as "Barbie." (*Id.* at ¶ 37). Sica has used sexual profanity in the office environment, stared at females for extended periods of time, and stuck out his buttocks and smacked it in front of a female staff member . (*Id.* at ¶¶ 35–38).

After formally assuming the SFPD position in early July 2011, Sica would exercise direct control over MPSC personnel without consulting Sharp. (*Id.* at ¶ 40). Sica attempted to move Meghan Maxwell from an enclosed area to the reception area, despite the fact that her duties included maintaining confidential personnel files. (*Id.*). Sica refused to discuss the move with Sharp. Thereafter, Sharp notified MPSC of the plan, and when MPSC replied that the move was inappropriate, Sharp relayed the information to Sica. Sica "came into Sharp's

office, pulled his chair up so that his knees were physically touching Ms. Sharp's, placed his face within inches of hers, and said 'what the fuck' or words to that effect." (*Id.* at ¶ 42). Sica stated that he was in charge and would place Maxwell wherever he thought best. (*Id*. at ¶ 43). He further directed Sharp not to report matters to her civilian employer, MPSC, but to him. (*Id*. at ¶ 44).

During July, 2010, Sica continued to engage in instances of hostility and harassment, *to wit*., using profanity, belittling a female employee and undermining Sharp's authority by chastising a FAC employee for performance deficiencies. (*Id*. at ¶¶ 45, 48, 50). Sharp reported Sica's behavior to MPSC as well as to Charpentier. (*Id*. at ¶ 51). Although Charpentier raised the issues with Sica, Sharp continued to experience a hostile and harassing work environment. (*Id*. at ¶ 54). Despite relaying her concerns to Hintz, no action was taken. (*Id*.).

On July, 15, 2010, Dwyer emailed Tipa and expressed that Sharp was belligerent and incapable of performing her duties. (*Id*. at ¶ 55). Sharp was terminated on July 19, 2010 when she was informed that PAARNG no longer needed her services. (*Id*. at ¶¶ 59, 60). On July 20, 2010, Dwyer told members of the PAARNG that Sharp was fired because she was belligerent, refused to work with Sica, and was having an affair with Quinn. (*Id*. at ¶ 56).

8

The present action followed. Sharp seeks, *inter alia.*, declaratory relief as well as compensatory and punitive damages and attorneys' fees.

## II. Issues Presented

The various defendants assert a number of grounds for dismissal. Each will be addressed with more specificity below:

A.     Sharp's state law claims are barred by sovereign immunity.

B.     The amended complaint fails to state a cause of action under §1983 because defendants are not state actors.

C.     The amended complaint fails to allege sufficient facts to support Sharp's constitutional claims.

D.     Sharp's claims under Title VII should be dismissed inasmuch as she failed to exhaust her administrative remedies.

E.     Alternatively, Sharp's claims under Title VII should be dismissed because she has failed to state a claim for a hostile work environment.

## III. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims that fail to assert a basis upon which relief can be granted. When considering a motion to dismiss, the court must "accept all [of plaintiff's] factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d

9

224, 233 (3d Cir. 2008) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374

n.7 (3d Cir. 2002)). *See also Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct.

1309, 1322–23 (2011).

The complaint must set forth sufficient facts to "state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The

question is not whether the plaintiff will ultimately prevail, but whether the

"complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*,

131 S. Ct. 1289, 1296 (2011)(citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506,

514 (2002)).

Although Rule 8(a)(2) requires only a "short and plain statement of the

claim showing that the pleader is entitled to relief," a plaintiff must do more than

present "bald assertions" and "legal conclusions." *In re Burlington Coat Factory*

*Secs. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does
> not need detailed factual allegations, a plaintiff's obligation to provide
> the "grounds" of his "entitle[ment] to relief" requires more than labels
> and conclusions, and a formulaic recitation of a cause of action's
> elements will not do. Factual allegations must be enough to raise a
> right to relief above the speculative level on the assumption that all of
> the complaint's allegations are true.

*Twombly*, 550 U.S. at 545 (citations omitted). Plaintiffs must nudge their claims

"across the line from conceivable to plausible." *Id.* at 570. *See also Phillips,* 515

F.3d at 232.

A plaintiff "armed with nothing more than conclusions" is not entitled to

discovery. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009).

Consequently, "where the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]' — 'that the pleader is entitled to relief,'" and the complaint should be

dismissed. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

The "plausible grounds" requirement "does not impose a probability

requirement at the pleading stage; it simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence" supporting the

plaintiff's claim for relief. *Twombly*, 550 U.S. at 556. Determining plausibility is

"a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 129 S. Ct. at 1950 (*citing Twombly*, 550

U.S. at 557–58).

The Third Circuit has outlined a two-part analysis that courts should utilize

when deciding a motion to dismiss for failure to state a claim. *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements

of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "'plausible claim for relief.'" *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1950). That is, a complaint must do more than allege the entitlement to relief; its facts must show such an entitlement. *Id.* at 211.

**IV. Discussion**

    *A. Sovereign Immunity*

    Claims I and II comprise state law claims against Dwyer, Charpentier, and Sica in their individual capacities for intentional interference with contractual relations and defamation. The Pennsylvania defendants contend these claims are barred by the doctrine of sovereign immunity.

    The doctrine of sovereign immunity bars damage claims for state law torts against "the Commonwealth, and its officials and employees acting within the scope of their duties." 1 Pa. C.S.A. § 2310.[4] The statute further provides that such parties "shall continue to enjoy sovereign immunity and official immunity ...

---

[4] "Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S.A. § 2310.

12

unless the General Assembly shall specifically waive immunity," except for several narrow enumerated exceptions. 1 Pa. C.S.A § 2310; *McGrath v. Johnson*, 67 F. Supp.2d 499, 511 (E.D. Pa.1999); *Tinson v. Pennsylvania*, No. Civ. A. 93-3985, 1995 WL 581978, at *6 (E.D. Pa. October 2, 1995).

Sovereign immunity extends to state agencies which are considered "arms of the state," as well as to employees of such agencies. *Bowers v. National Collegiate Athletic Association*, 475 F.3d 524, 545-546 (3d Cir.2007). An entity is properly characterized as an arm of the state when a judgment against it would have essentially the same practical consequences as a judgment against the state itself. *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir.1989) (internal citation omitted).

The Pennsylvania General Assembly has only made sovereign immunity inapplicable in certain prescribed circumstances. *See* 42 Pa. C.S.A. § 8522(b). The nine exceptions to the rule of immunity provided for in the Code must arise out of negligent acts. *Id.*[5] A Commonwealth agency and its employee acting within the

---

[5] The limited negligent categories where the Commonwealth has explicitly waived immunity are: 1) vehicle liability; 2) medical-professional liability; 3) care, custody, or control of personal property; 4) Commonwealth real estate, highways and sidewalks; 5) potholes and other dangerous conditions; 6) care, custody or control of animals; 7) liquor store sales; 8) National Guard activities; and 9) toxoids and vaccines. None is applicable to the Sharp's claims of intentional interference with contractual relations and defamation.

(continued...)

13

scope of his employment is protected by sovereign immunity from intentional

torts. 42 Pa. C. S. A. §8501; *Frazier v. Southeastern Pennsylvania Transp. Auth.*,

868 F. Supp. 757, 762 (E.D. Pa.1994). A Commonwealth employee is still liable

for willful misconduct committed outside the scope of his office or employment.

*McGrath*, 67 F. Supp.2d at 512; *Cooper v. Beard*, Civ. A. No. 06-171, 2006 WL

3208783, at *16 (E.D. Pa. Nov. 2, 2006) ("[W]illful misconduct does not vitiate a

Commonwealth employee's immunity if the employee is acting within the scope of

his employment, including intentional acts[.]"); *LaFrankie v. Miklich*, 152 Pa.

Cmwlth. 163, 171, 618 A.2d 1145, 1150–51 (1992).

Sharp alleges that the actions of Dwyer, Charpentier and Sica fell outside of

the course or scope of their employment with the PAARNG and, consequently,

sovereign immunity is inapplicable. In determining whether an act occurred within

the scope of employment, the Pennsylvania Superior Court has adopted the

standard set forth in the Restatement (Second) of Agency § 228. *Butler v. Flo-Ron*

*Vending Co.*, 383 Pa. Super. 633, 557 A.2d 730 (Pa. Super. Ct. 1989). Since the

Pennsylvania Supreme Court has not expressly held that § 228 of the Restatement

is the standard in Pennsylvania, the Third Circuit has predicted that the adoption

---

[5](...continued)
42 Pa. C.S.A. § 8522(b).

of the Restatement standard in *Butler* by the Pennsylvania Superior Court would be followed by the Supreme Court. *Aliota v. Graham*, 984 F.2d 1350, 1358 (3rd Cir.1993). Likewise, the Third Circuit has predicted the Pennsylvania Supreme Court would adopt other relevant Restatement provisions. *Id.*

Thus, under Pennsylvania law, as well as §228 of the Restatement, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by the employer. *Wesley v. Hollis*, Civ. A. No. 03–3130, 2007 WL 1655483, at *14 (E.D. Pa. June 6, 2007). An act by a Commonwealth official or employee which does not satisfy each of these criteria is outside the scope of employment and is not covered by state sovereign immunity. *Bowman v. Reilly*, Civ. A. No. 09-1332, 2009 WL 1636021, *3 (E.D. Pa. June 10, 2009). Because sovereign immunity is an affirmative defense, these factors must be "'apparent on the face of the complaint'" in order to sustain a motion to dismiss for failure to state a claim. *Rycoline Prods. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir.1997) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir.1978)).

15

As to Count I, the amended complaint asserts that Dwyer, Charpentier and Sica "improperly . . . induc[ed] plaintiff's civilian employer to fire her[.]" (Doc. 12, ¶ 63). It further claims that these defendants "exceeded the scope of their employment" and that their actions "cannot be said to be in the best interests of their employer[.]" (*Id*. at ¶ 64). Such averments suggest that the actions fell outside of the scope of employment for these defendants. Based on these allegations, the amended complaint states facts which, if established, could negate a sovereign immunity defense. Consequently, defendants are not entitled to sovereign immunity on the intentional interference with contractual relations claim at the motions-to-dismiss stage. The motion to dismiss should, therefore, be denied as to Count I.

With respect to Count II, Sharp has alleged that Dwyer, Charpentier and Sica "by their derogatory and defamatory words and language adversely affected [Sharp's] reputation." (Doc. 12, ¶ 66). Specifically, the amended complaint avers that rumors were spread insinuating that plaintiff was having an affair with a co-worker, Capt. Quinn. Such statements, if established and properly attributed to these defendants, would arguably fall outside of the course and scope of their employment inasmuch as such statements neither related to defendants' employment duties nor would they seem to serve the PAARNG's interests. Thus,

defendants have not established, on the face of the amended complaint, that they are entitled to sovereign immunity as to the defamation claim. Accordingly, it is recommended that the motion to dismiss be denied on Count II.

However, the amended complaint makes these allegations of spreading rumors only as to Dwyer and Charpentier; it does not contend that Sica made statements to others of an affair between Sharp and Quinn. Consequently, it is recommended that Count II be dismissed, without prejudice, as to Sica.

   *B. Are defendants state actors for purposes of §1983?*

Count III asserts a cause of action under §1983, averring that defendants violated Sharp's rights to free speech, substantive due process and protected property interest in violation of the First, Fifth and Fourteenth Amendments. Defendants contend that the amended complaint fails to state a claim under §1983 to the extent Sharp asserts such a claim against the agencies and the individual defendants in their official capacities. Specifically, the defendants maintain that these parties are not "persons" for purposes of §1983 liability.

   Under 42 U.S.C. §1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* Section 1983 imposes civil liability upon any person who, under color of state

law, deprives someone of the rights, privileges, or immunities secured by the

federal Constitution or the laws of the United States. *Gruenke v. Seip*, 225 F.3d

290, 298 (3d Cir. 2000). Section 1983 "is not itself a source of substantive rights,

but merely provides a method for vindicating federal rights elsewhere conferred."

*Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a Section 1983

claim, therefore, a plaintiff "must demonstrate a violation of a right secured by the

Constitution and the laws of the United States [and] that the alleged deprivation

[violation of a right] was committed by a person acting under the color of state

law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

Neither states, state agencies, nor state employees sued in their official

capacities qualify as "persons" under § 1983. *Hafer v. Melo*, 502 U.S. 21, 31, 112

S. Ct. 358, 116 L. Ed.2d 301 (1991) (holding that state officials sued in their

individual capacities are considered persons under § 1983); *Will v. Mich. Dep't of

State Police*, 491 U.S. 58, 67, 109 S. Ct. 2304, 105 L. Ed.2d 45 (1989) (holding

that states and their agencies are not persons under § 1983). Consequently, to the

extent Count III brings a cause of action against PAARNG, or against Dwyer,

Charpentier and Sica in their official capacities, it is subject to dismissal.[6]

Additionally, defendants MPSC and Tipa maintain that they are not state

actors for purposes of §1983 liability. They aver that, because MPSC is a

contractor with PAARNG, it and its employees are private actors for purposes of

§1983.

In some circumstances, even private parties may be regarded as state actors

for §1983 purposes. In instances where a private actor is accused of committing a

constitutional tort, "the principal question at stake is whether there is such a close

nexus between the State and the challenged action that seemingly private behavior

may be fairly treated as that of the State itself." *Kach v. Hose*, 589 F.3d 626, 646

(3d Cir. 2009) (quoting *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005). In

determining whether state action exists, courts focus on whether the actor's

conduct is fairly attributable to the government. *See Lugar v. Edmonson Oil Co.*,

457 U.S. 922, 937–42, 102 S. Ct. 2744, 73 L. Ed.2d 482 (1982). This inquiry has

---

[6] However, the Third Circuit has held that when a state official is sued in his or her official capacity for declaratory or injunctive relief, then the official, in his or her official capacity, is a person under §1983. Under this defined set of circumstances, a §1983 suit is not barred by sovereign immunity. *Hindes v. F.D.I.C.*, 137 F.3d 148, 165-66 (3d Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 27 (1991)); *Will v. Dept. of State Police*, 491 U.S. 58, 71 n. 10 (1989); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Quern v. Jordan*, 440 U.S. 332 (1979).

two parts: courts consider "first whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority, and second, whether the private party charged with the deprivation could be described in all fairness as a state actor." *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 620, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (applying *Lugar*) (internal citations omitted).

The Supreme Court has unequivocally held that "acts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell–Baker v. Kohn*, 457 U.S. 830, 841 (1982). In *Rendell–Baker*, the Supreme Court applied the first test and ruled that a private nonprofit corporation that contracted with state and local agencies to educate maladjusted high school students was not a state actor for purposes of section 1983. Plaintiff, Rendell–Baker, was a former employee of the school, who alleged that the school fired her without due process because she exercised her First Amendment rights in supporting a student petition. Rendell–Baker filed a section 1983 claim against the school, alleging that she was discharged in violation of her constitutional rights of free speech and due process.

In holding that the school was not a state actor for purposes of section 1983, the Court observed that the receipt of public funds by the school did not make the discharge of employees a state action. *Id*. at 840. The Court held:

> The school . . . is not fundamentally different from many private corporations whose business depends primarily on contracts to build roads, bridges, dams, ships, or submarines for the government. Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.

*Id*. at 840–41. The Court held that "the decisions to discharge the petitioners were not compelled or even influenced by any state regulation." *Id*. Accordingly, the Court concluded that regulation was "not sufficient to make a decision to discharge, made by private management, state action." *Id*. at 842. *See also Leshko, supra* at 342 ("[S]tate-hired private contractors are not automatically state actors under §1983, even if the state is their only patron[.]").

The amended complaint alleges that MPSC had a contract with PAARNG to provide personnel support services to the State Family Program Office. (Doc. 12, ¶ 14). Part of that Office included the FAC which, in turn, offered programs and services such as providing information about military, federal, state and local resources to military personnel and their families. (*Id*. at ¶ 16). Such resources

include assistance and referrals for legal, financial, medical, crisis intervention and community outreach matters. (*Id.*).

*Rendell–Baker* makes it clear that a state contractor and its employees are not state actors simply because they are carrying out a state-sponsored program or activity and the contractor's financial compensation derives from the state's coffers. Moreover, the fact that the activity performed is a public function does not render the contractor and its employees state actors. For the nature of the contractor's activity to make a difference in the analysis, the function performed must have been "traditionally the exclusive prerogative of the State." *Id*. at 842 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)); *see also Black by Black v. Indiana Area Sch. Dist.*, 985 F.2d 707 (3d Cir.1993) (the Third Circuit, applying *Rendell–Baker*, unanimously held that "[w]hile [defendants] were carrying out a state program at state expense, they were not performing a function that has been 'traditionally the exclusive prerogative of the state' and there was no state regulation that 'compelled or even influenced' the conduct which is alleged to have violated plaintiffs' constitutional rights.").

Because the work performed in the FAC's is not characterized as one historically reserved to the State, *Rendell–Baker* holds that it does not transform

22

MPSC into a state actor for purposes of section 1983. Consequently, the

allegations of the amended complaint, even if true, fail to establish state action by

either MPSC or Tipa.[7]

Because MPSC and Tipa are not state actors merely by virtue of their status

as private contractors with PAARNG, their motion to dismiss should be granted

on Count III.

### C. Has Sharp alleged sufficient facts to support her constitutional claims?

#### 1. Free speech

Defendants next contend that Sharp has failed to state a claim for violation

of her right to free speech under the First Amendment. The amended complaint

---

[7] Such issues need not be decided at summary judgment and are appropriately considered at the motion-to-dismiss state. Courts within the Third Circuit have granted motions to dismiss section 1983 actions because the defendants were not state actors. *See, e.g., Schneider v. Arc of Montgomery County*, 497 F. Supp.2d 651, 659 (E.D. Pa. 2007) (granting motion to dismiss § 1983 claim against nonprofit corporation that received State funding and engaged in care, education, and support of the developmentally disabled for failure to adequately allege state action; expressly rejecting argument that such a decision must wait until a summary judgment motion). *See also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (affirming grant of motion to dismiss); *Leshko v. Servis*, 423 F.3d 337 (3d Cir.2005) (same); *Cmty. Med. Ctr. v. Emergency Med. Servs. of Ne. Pa., Inc.*, 712 F.2d 878 (3d Cir.1983) (same); *Sershen v. Cholish*, No. 3:07-CV-1011, 2008 WL 598111 (M.D. Pa. Feb. 29, 2008) (granting motion to dismiss section 1983 claims because defendants were not state actors); *Diamond v. Nye*, No. 1:06-CV-0370, 2006 WL 3000769, at *3 (M.D. Pa. Oct.19, 2006) (granting motion to dismiss because the allegations in the complaint failed to establish state action because "'[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action.'") (quoting *Am. Mfts. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)).

avers that Dwyer, MPSC and Tipa "denied plaintiff of her right to free speech in reporting the overbilling practices of MPSC[.]" (Doc. 12, ¶ 73(a)).[8]

To prevail on a First Amendment claim, "an employee must prove that the conduct at issue was constitutionally protected, and that it was a substantial or motivating factor in the termination." *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996). That is, an employee "must show that the termination . . . was motivated by [her] speech on a matter of public concern." *Id*. at 685. *See Connick v. Myers*, 461 U.S. 138, 143 (1983). The Supreme Court has created a balancing test that would allow defendants to "escape liability by showing that [they] would have taken the same action even in the absence of the protected conduct." *Umbehr*, 518 U.S. at 675; *Thomas v. Independence Township*, 463 F.3d 285, 291 (3d Cir. 2006) (explaining that § 1983 First Amendment claim requires that plaintiff allege constitutionally protected conduct, and related retaliatory action sufficient to deter a person of ordinary firmness from exercising his rights).

Additionally, with respect to the free speech retaliation claim, the Third Circuit has noted that the temporal proximity between the employee's protected activity and the adverse employment action "is an obvious method by which a

---

[8] As noted above, the amended complaint fails to state an action under §1983 against MPSC and Tipa because they are not state actors. Thus, the claims asserted in Count III will not be considered with respect to these parties.

plaintiff can proffer circumstantial evidence sufficient to raise the inference that

[his] protected activity was the likely reason for the adverse action." *Kachmar v.*

*SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir.1997)(internal quotation

marks and citations omitted).

The amended complaint avers that Dwyer, MPSC and Tipa "deprived

plaintiff of her right to protected free speech in reporting the overbilling practices

of MPSC[.]" (Doc. 12, ¶ 73(a)). For purposes of a motion to dismiss, reporting

overbilling by a contractor to a State agency would presumably constitute activity

protected by the First Amendment. However, Sharp has not stated facts to

establish the second element of a free speech claim—that the report of overbilling

was a substantial or motivating factor in her termination. Rather, the amended

complaint alleges that Sharp was fired four (4) days after Dwyer emailed Tipa to

relay her belief that Sharp was not performing her duties well. Merely because an

adverse employment action occurs subsequent to engaging in protected conduct is

insufficient to allege it is a substantial or motivating factor. *See Robinson v. City*

*of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir.1997) (*abrogated on other grounds*,

*Burlington No. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165

L.Ed.2d 345 (2006)) ("[T]he mere fact that adverse employment action occurs

after [a protected activity] will ordinarily be insufficient to satisfy the plaintiff's

burden of demonstrating a causal link between the two events."). Moreover,

Dwyer's potential liability is not established where she is not the person who

terminated Sharp.

Accordingly, it is recommended that this claim be dismissed, without

prejudice.

### 2. Substantive due process

Sharp also makes a substantive due process claim against MPSC, Tipa and

Dwyer. Sharp's amended complaint appears to assert both a property interest in

her employment as well as a liberty interest in her reputation. She asserts that

discovery will show that MPSC took adverse action against her and that the

violations of Sharp's liberty interest and property interest shock the conscience.

The substantive component of the Fourteenth Amendment's Due Process

Clause proscribes the deprivation of life, liberty, and property save when

"constitutionally adequate procedures" are employed. *Cleveland Bd. of Educ. v.*

*Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed.2d 494 (1985). Even

when such procedures are employed, government action may violate substantive

rights when it constitutes an arbitrary abuse of power. *Nicholas v. Pennsylvania*

*State Univ.*, 227 F.3d 133, 139–40 (3d Cir.2000). "To establish a substantive due

process claim, a plaintiff must prove the particular interest at issue is protected by

the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). *See U.S. v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed. 697 ("Substantive due process prevents the government from engaging in conduct that shocks the conscience ... or interferes with rights implicit in the concept of ordered liberty.").

For Sharp to prevail on her substantive due process claim with regard to her job, she must establish that she has a property interest protected by the Fourteenth Amendment. *Id.* at 140. The right to property is an interest protected by the Fourteenth Amendment's Substantive Due Process Clause, but, not all property rights fall under the rubric of the substantive component of the Fourteenth Amendment. *Id*. The substantive component of the Fourteenth Amendment applies only to fundamental property interests. *Id*. at 140–41. Whether a property interest is fundamental is determined by reference to the Constitution and its historical purpose. *Id*. Thus, fundamental property rights are derived from the Constitution, not from other sources of law, such as state law. *Id*. at 140–41 (quoting and citing *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 229–30, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)).

27

Inasmuch as Pennsylvania is an at-will employment state, not all employees have a property interest in their jobs. *Swinehart v. McAndrews*, 221 F. Supp.2d 552, 557 (E.D. Pa. 2002), *aff 'd*, 69 F. App'x. 60 (3d Cir. 2003). "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (internal citations omitted). "Whether a person has a legitimate entitlement to-and hence a property interest in-his [] job is a question answered by state law." *Id*. "The decisional law is clear that an at-will employee does not have a legitimate entitlement to continued employment because he serves solely at the pleasure of his employer." *Id*.

Moreover, the Third Circuit has limited review of property interests under the Substantive Due Process Clause to claims involving real property ownership, which has been historically protected by the Constitution and is considered fundamental to American society. *Id*. (quoting and citing *Regents of Univ. of Michigan*, *supra*). Sharp's claim is not one in real property; rather, it is a claim stating a property interest in a job. It is not, therefore, a fundamental property interest protected by the substantive component of the Fourteenth Amendment. *Id*.

28

at 141. Accordingly, Sharp cannot, as a matter of law, sustain her section 1983 suit based upon a violation of substantive due process with regard to her job.

Sharp also contends that the defendants deprived her of her protected liberty interest. Specifically, the amended complaint alleges that actions, comments and derogatory remarks of Dwyer, MPSC and Tipa deprived Sharp of "protected liberty interest as an employee of MPSC[.]" (Doc. 12, ¶ 73(c)).

Any property or liberty interest must be created by statutes or regulations. *See Hewitt v. Helms*, 459 U.S. 460, 472 (1983). Even where an individual does not have a liberty or property interest in continued employment, he or she may still have a protected liberty interest in his or her reputation. *Swinehart, supra* at 559. "[T]he liberty to pursue a calling or occupation" has been recognized as an interest secured to individuals by the Fourteenth Amendment. *Thomas,* 463 F.3d at 297; *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir.1994)(the Due Process Clause protects a right to general employment, but not specific employment; "[i]t is the right to pursue a calling or occupation, and not the right to a specific job that is protected by the 14th Amendment."); *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir.1992).

The United States Court of Appeals for the Third Circuit has not clarified whether this interest is sufficiently "fundamental" to qualify for substantive due

process protection. *Nicholas*, 227 F.3d at 138–143. Nevertheless, the Court of

Appeals has highlighted a distinction between "the liberty to pursue a calling or

occupation" and "the right to a specific job" for the purpose of determining

whether an individual has an interest that is worthy of constitutional protection.

*Piecknick*, 36 F.3d at 1259, 1262. This line of reasoning suggests that "the liberty

to pursue a calling or occupation," unlike "the right to a specific job," is entitled to

substantive due process protection. *Wright v. Genesee County Corp.*, 659

F.Supp.2d 842, 849–850 (E.D. Mich.2009).

However, it is difficult to discern how the allegations of the amended

complaint intend to present a claim for deprivation of Sharp's protected liberty

interest. It seems unclear whether Sharp is asserting a claim based on a

constitutionally protected right in her reputation, in her employment with MPSC

or in her future employment opportunities. While liberty interest rights are

generally asserted with respect to procedural due process, the amended complaint

does not assert such a claim under that provision. Consequently, it is

recommended that this claim be dismissed without prejudice.[9]

---

[9] The briefs reference the stigma-plus test, which has been applied to mean that when an
employer "creates and disseminates a false and defamatory impression about the
employee in connection with his termination," it deprives the employee of a protected
liberty interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) citing
(continued...)

30

### 3. Equal Protection

The amended complaint also contends that defendants Charpentier and Sica

violated Sharp's equal protection rights under the Fourteenth Amendment, *to wit.*,

that Sharp was subjected to discrimination based on her gender and that her

employment setting constituted a hostile work environment. The Equal Protection

Clause of the Fourteenth Amendment provides that the State shall not "deny to any

person within its jurisdiction the equal protection of the laws." U.S. CONST.

amend. XIV, § 1. This declaration "is essentially a direction that all persons

similarly situated should be treated alike." *Shuman v. Penn Manor Sch. Dist.*, 422

F.3d 141, 151 (3d Cir. 2005).

Defendants contend that the amended complaint fails to allege that Sharp

was treated differently than others similarly-situated.[10] Sharp alleges that Sica used

profanity; engaged in vulgar behavior; refused to communicate with female

employees; was aggressive, hostile and harassing of female employees; and

---

[9](...continued)
*Codd v. Velger*, 429 U.S. 625, 628 (1977). However, the stigma-plus test it is not
normally applied in the substantive due process context. *Burns v. Alexander*,  776 F.
Supp.2d 57, 92 (W.D. Pa. 2011) (citing *Doe v. Michigan Dept. of State Police*, 490 F.3d
491, 502 (6th Cir.2007)).

[10] Defendants' assertion that the amended complaint fails to aver that the rumor of an
affair between Sharp and Quinn is untrue is unpersuasive. Clearly, using the term "rumor"
implies that such a statement lacks factual certainty.

undermined Sharp's authority over MSPC employees in the Family Assistance

Center. Further, according to the amended complaint, all these incidents occurred

in a very short period of time — between July 1 and July 19, 2010. It also alleges

that such comments and actions were directed at female employees, which

includes Sharp. For purposes of a motion to dismiss, such actions and statements

are, arguably, sufficiently severe or pervasive to state an equal protection claim

Accordingly, the motion to dismiss should be denied on this issue.

The amended complaint avers that Charpentier was Sica's supervisor.

However, there is no respondeat superior liability in the § 1983 context; a

defendant must have personal involvement in the alleged wrongs for liability to

attach. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988) (internal

citations omitted). This personal involvement can be shown where a defendant

personally directs the wrongs, or has actual knowledge of the wrongs and

acquiesces in them. *Id.*; *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention

Center*, 372 F.3d 572, 586 (3d Cir. 2004) (noting that "a supervisor may be

personally liable under § 1983 if he or she participated in violating the plaintiff's

rights, directed others to violate them, or, as the person in charge, had knowledge

of and acquiesced in his subordinates' violations"). Actual knowledge "can be

inferred from circumstances other than actual sight." *Baker v. Monroe Twp.*, 50

F.3d 1186, 1194 (3d Cir.1995). Acquiescence is found "[w]here a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir.1997).

The amended complaint states that Sharp complained to Charpentier about Sica's conduct. It further contends that Charpentier expressed that Sica was unfamiliar in working with civilians or female leaders, and advised Sharp that he would address the issue with Sica. (Doc. 12, ¶¶ 51, 52). Although the issue was addressed with Sica, the problems are alleged to have continued. (*Id.*). These allegations are sufficient to state a claim against Charpentier because they articulate actual knowledge and acquiescence on his part. It is recommended that the motion to dismiss be denied on this issue as to Charpentier and Sica.

### D. Exhaustion of Remedies

Count IV of the amended complaint asserts a claim under Title VII, which proves that it is unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to
> discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such
individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000(e)(2).

To further the goals of Title VII, Congress created a remedial scheme by
which an aggrieved party must file a complaint with any state anti-discrimination
agency, such as the PHRC, followed by a requirement that the individual also file
a claim with the EEOC within 300 days of the allegedly discriminatory action. 42
U.S.C. §§ 2000e-5(b) through 5(e); *West v. Philadelphia Elec. Co.*, 45 F.3d 744,
754 n. 8 (3d Cir.1995) ("The 300-day period applies where the plaintiff has
initially instituted proceedings with a State or local agency. Otherwise, the
applicable period is 180 days."); *Seredinski v. Clifton Precision Prods. Co.*, 776
F.2d 56, 63 (3d Cir.1985). Only after those steps have been completed may an
individual file suit in federal court. *West*, 45 F.3d at 754 ("This filing is a
prerequisite to a civil suit under Title VII."). In order to exhaust these remedies as
to a particular defendant, that defendant ordinarily must be named in the plaintiff's
EEOC charge of discrimination. *See Smith v. Delware River Stevedores*, No.
07-1864, 2008 WL 4890135 at *3 (E.D. Pa. Nov.10, 2008) (citing *Schafer v. Bd.
of Pub. Educ.*, 903 F.2d 243, 251 (3d Cir.1990)).

34

The Pennsylvania defendants maintain that by failing to assert a complaint against them when filing her complaint with the EEOC, Sharp has not exhausted her administrative remedies. A defendant who is neither formally named in nor served with the plaintiff's EEOC charge may nonetheless be properly sued because "a plaintiff cannot be held responsible for the EEOC's failure to properly name a defendant or serve a copy of the charge[.]" *DeLa Cruz v. Piccari Press*, 521 F. Supp.2d 424, 431–32 (E.D. Pa. 2007) (allowing suit against party that did not receive notice of the EEOC charge but that was named in the plaintiff's EEOC complaint); *see also Evans v. Maax-KSD Corp.*, No. 06-2804, 2006 WL 3488708 at *3 (E.D. Pa. Nov. 30, 2006) (acknowledging that defendant never received notice of plaintiff's EEOC charge and finding that, because plaintiff satisfied the jurisdictional prerequisites of filing a charge of discrimination and receiving a notice of right to sue, the court had jurisdiction over his discrimination claim); *Rickard v. The Lion Brewery, Inc.*, No. 07-CV-984, 2007 WL 3492714 at *7 (M.D. Pa. Nov. 13, 2007) (same). When a defendant is unnamed in the formal EEOC charge but is named "in the body of the formal charge," the plaintiff can be found to have satisfied exhaustion requirements as to that defendant. *Smith, supra* at n. 2 (citing *DeLa Cruz, supra*). However, the exhaustion requirement is not

satisfied as to the unnamed defendant if the description in the plaintiff's EEOC charge did not even mention that defendant. *Id*. at *3.

While it includes the Right to Sue letter as an attachment, the amended complaint does not include allegations as to the substance of the EEOC complaints including, particularly, whether there were any factual averments made therein with respect to Dwyer, Charpentier, Sica or PAARNG. Sharp concedes that her complaint to the EEOC did not name the Pennsylvania defendants as parties thereto. There are no factual allegations that Dwyer, Charpentier, Sica and/or PAARNG were referenced in the complaint made by Sharp to the EEOC, despite not being named as defendants in the EEOC complaint. However, inasmuch as failure to exhaust is an affirmative defense on which a defendant bears the burden of proof, for purposes of the instant motion, the allegations of the amended complaint, coupled with the Right to Sue letter attached thereto, are sufficient to satisfy a plaintiff's burden of articulating that exhaustion requirements have been met. *See Robinson v. Consolidated Rail Corp.*, No. 1:07-CV-1641, 2010 WL 3842787, *1 (M.D. Pa. Sept. 28, 2010) ("In Title VII actions, failure to exhaust administrative remedies is an affirmative defense in the nature of statute of limitations.... [and] the defendant bears the burden of pleading and proving that the plaintiff has failed to exhaust administrative remedies.") (quoting *Williams v.*

*Runyon*, 130 F.3d 568, 573 (3d Cir.1997) (citations omitted). It is recommended, therefore, that the motion to dismiss be denied on this issue.[11]

### E. Hostile Work Environment

Defendants also contend the amended complaint fails to state a cause of action for a hostile work environment. A hostile work environment exists when unwelcome racist, ageist or sexist conduct unreasonably interferes with a person's performance or creates an intimidating, hostile, or offensive working environment. *See Weston v. Pennsylvania*, 251 F.3d 420, 425-26 (3d Cir.2001) (citing *Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 65-67, 106 S. Ct. 2399, 91 L. Ed.2d 49 (1986)). The Court of Appeals for the Third Circuit has established five elements a plaintiff must establish to succeed on a hostile work environment claim:

> (1)    the plaintiff suffered intentional discrimination because of plaintiff's membership in a protected class;
>
> (2)    the discrimination was pervasive [or severe];[12]

---

[11] Of course, should discovery disclose that the EEOC complaint did not include allegations concerning the Pennsylvania defendants, a failure to exhaust issue may be re-asserted on summary judgment.

[12] The Third Circuit had required that discriminatory harassment be "pervasive and regular." *See, e.g.*, *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001); *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 753 (3d Cir.1995). In *Pennsylvania State Police v. Suders*, the Supreme Court of the United States made it clear that the harassment must be "sufficiently severe or persuasive to alter the conditions of [the complainant's] employment." 542 U.S. 129, 133-34 (2004); *see also Jensen v. Potter*, 435 F.3d 444, 449

(continued...)

(3)    the discrimination detrimentally affected the plaintiff;

(4)    the discrimination would have detrimentally affected a
       reasonable person of the same protected class in that position;
       and,

(5)    the existence of respondeat superior liability.

*Shahin v. College Misericordia*, No. 3:CV-02-0925, 2006 WL 2642355, at *11

(M.D. Pa. Sept.13, 2006) (citing *West*, 45 F.3d at 753).

      "[T]he harassment must be so severe or pervasive that it alters the

conditions of employment and creates an abusive environment." *Weston*, 251 F.3d

at 426 (citing *Meritor*, 477 U.S. at 67). A court should consider all the

circumstances in determining whether an environment is hostile or abusive,

including: "the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; whether it

unreasonably interferes with an employee's work performance." *Weston*, 251 F.3d

at 426 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 126

L. Ed.2d 295 (1993)). The record must be evaluated as a whole. *Cardenas v.*

*Massey*, 269 F.3d 251, 261 (3d Cir. 2001)(citing *Durham Life Ins. Co. v. Evans*,

166 F.3d 139, 149 (3d Cir.1999)).

---

[12](...continued)
n.3 (3d Cir. 2006).

Defendants argue that the amended complaint fails to state a claim for hostile work environment not only because it makes no allegations that Sharp was treated differently than others because of her gender but also because the amended complaint is devoid of allegations suggesting a sufficiently hostile conditions.

However, the amended complaint alleges that Sica made remarks that could, arguably, establish a hostile work environment. It alleges that Sica used profanity; engaged in vulgar behavior; refused to communicate with female employees; was aggressive, hostile and harassing of female employees; and undermined Sharp's authority over MSPC employees in the Family Assistance Center. Additionally, Sharp alleges that all these incidents occurred in a very short period of time — between July 1, 2010 when Sica became Director, until July 19, 2010 when she was terminated. Whether such remarks and behavior were directed at Sharp or to female employees generally is not determinative, for purposes of a motion to dismiss, inasmuch as Sharp was a member of the class to which Sica's allegedly improper and harassing behavior was directed. Moreover, for purposes of a motion to dismiss, such actions and statements are sufficiently severe or pervasive to state a claim for a hostile working environment. Accordingly, Sharp has stated a claim for a hostile work environment under Title VII.

It should be noted, however, that no such behavior is alleged on the parts of Charpentier, Dwyer or Tipa. Moreover, Title VII does not authorize liability against an individual supervisor or employee. *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1078 (3d Cir.1996) (en banc); *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 604 (M.D. Pa. 2002). *See also Emerson v. Thiel College*, 296 F.3d 184 (3d Cir. 2002) (individual employees are not liable under Title VII).

Consequently, it is recommended that the Title VII claim in Count IV should be dismissed, with prejudice, as to the individual defendants and denied as to MPSC and PAARNG.

**V. Recommendation**

Based on the foregoing, it is respectfully recommended that defendants' motions to dismiss (Docs. 14, 16) be granted in part and denied in part. Specifically, it is recommended that:

1.  The motion to dismiss (Doc. 14) be denied as to **Count I.**

2.  The motion to dismiss (Doc. 14) be granted, without prejudice, with respect to the claims in **Count II** against Sica, and denied in all other respects.

3.  The motion to dismiss (Doc. 14) be granted on **Count III** to the extent it asserts a cause of action against PAARNG, or against Dwyer, Sica and Charpentier in their official capacities with

40

prejudice; that it be **GRANTED** on Sharp's free speech claim and that this claim be dismissed, without prejudice; that it be **GRANTED** on Sharp's substantive due process claim regarding her property interest(s) rights and that this claim be dismissed, without prejudice; that it be **GRANTED** on Sharp's due process liberty interest claims and that this claim be dismissed, without prejudice; and that it be **DENIED** on Sharp's equal protection claim.

4.  The motion to dismiss (Doc. 16) be **GRANTED**, with prejudice, as to MPSC and Tipa on Count III.

5.  The motions to dismiss (Docs. 14, 16) be **GRANTED**, with prejudice, on Count IV as to Dwyer, Sica, Charpentier and Tipa.

6.  The motions to dismiss (Docs. 14, 16) be **DENIED** on Count IV as to PAARNG and MPSC.


Signed on May 29, 2012.


_____

MILDRED E. METHVIN
U. S. MAGISTRATE JUDGE