**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KELLY A. SHARP,** | : | |
| **Plaintiff** | : | **No. 1:11-cv-1262** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **PENNSYLVANIA ARMY** | : | **(Magistrate Judge Methvin)** |
| **NATIONAL GUARD, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court is Magistrate Judge Methvin's May 29, 2012 Report and

Recommendation, recommending that Defendants' motions to dismiss be granted in part and

denied in part.  (Doc. No. 25.)  Defendants Pennsylvania Army National Guard, Colonel Cindy

Dwyer, Major William Charpentier, and Captain Paolo Sica (collectively "National Guard

Defendants") filed objections to the Report and Recommendation on June 13, 2012.  (Doc. No.

27.)  Defendant Military Personnel Services Corporation filed an objection to the Report and

Recommendation on June 15, 2012.  (Doc. No. 28.)  For the reasons that follow, the Court will

adopt the Report and Recommendation in part and will grant in part Defendants' motions to

dismiss.

**I.      BACKGROUND**

The background of this matter is set forth in more detail in Magistrate Judge Methvin's

Report and Recommendation; however, the Court will briefly summarize the pertinent details.[1]

---

[1]  In reviewing the motion to dismiss, the Court will accept Plaintiff's factual allegations
as true and will "consider only the allegations in the complaint, exhibits attached to the
complaint, matters of public record, and documents that form the basis of a claim."  Lum v. Bank
of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004); see also Phillips v. Cnty. of Allegheny, 515 F.3d
224, 233 (3d Cir. 2008).

Plaintiff Kelly A. Sharp alleges that she was employed by Military Personnel Services from September 29, 2009 to July 19, 2010, when she was terminated after being subjected to what she describes as a hostile work environment.  While at Military Personnel Services, Plaintiff served as a liaison between the National Guard and  Military Personnel Services' Family Assistance Centers which are service centers for soldiers and their families.  (Doc. No. 12 ¶¶ 15-17.)  Plaintiff initially worked under supervision of a National Guard member, Captain Ryan Quinn.  Plaintiff also received direction from Captain Quinn's supervisor, Major William Charpentier.  (Id. ¶¶ 18, 20.)  Colonel Cindy Dwyer was Charpentier's supervisor and also served as the personnel manager of the Joint Force Headquarters, which had overall responsibility for the Family Assistance Centers.  (Id. ¶ 19.)

In March 2010, Plaintiff discovered that Military Personnel Services had billed the National Guard at a higher rate than the one specified in their contract.  (Id. ¶ 21.)  Plaintiff reported these irregularities to non-party Sandy Hintz, the program manager at Military Personnel Services.  (Id. ¶ 22.)  Hintz informed Plaintiff that Defendant Ronald Tipa, Military Personnel Services' principal and corporate officer, would handle the matter directly with Defendant Dwyer, and that she need not pursue the matter further.  (Id. ¶¶ 22-24.)

In April 2010, Defendant Dwyer called Plaintiff into her office, where she asked her about Captain Quinn's job performance.  (Id. ¶ 25.)  Plaintiff was complimentary of Captain Quinn's performance, but Defendant Dwyer disagreed with Plaintiff's positive characterization of Quinn's performance.  (Id.)  That same month, Defendant Dwyer applied for a position as Chief of Staff of the National Guard; however, she was not selected for the position.  (Id. ¶ 26.) Plaintiff alleges that Defendant Dwyer blamed Plaintiff's sister, who was a member of the

interview panel that reviewed applicants for the Chief of Staff position, for not selecting her for the position.  (Id. ¶ 28.)

The next month, in May 2010, Plaintiff alleges that Defendants Dwyer and Charpentier circulated rumors that Plaintiff and Captain Quinn were engaged in an extramarital affair and that Defendant Dwyer relayed the rumor to parties in the National Guard and staff at the Family Assitance Center where Plaintiff worked.  (Id. ¶¶ 29-30.)  Plaintiff alleges that she complained about the rumor to Hintz, but that the Military Personnel Services took no action.  (Id. ¶ 31.) Later that month, Defendant Dwyer informed Captain Quinn that he would be removed from his position and replaced by Defendant Sica.  (Id. ¶ 32.)

Defendant Sica replaced Captain Quinn in July 2010, and soon began engaging in conduct that Plaintiff characterized as hostile and demeaning to females.  (Id. ¶ 33-51.)  In her amended complaint, Plaintiff details several instances of allegedly hostile conduct by Defendant Sica, including refusing to speak with a female senior ranking non-commissioned officer, commenting on a female Lieutenant's appearance and sexual preferences, addressing a female staff member as "Barbie," using terms such as "bitch" and "whore" in the office environment, and engaging in other behavior that Plaintiff classified as lewd and lascivious.

On July 9, 2010, Plaintiff met with Defendant Charpentier to discuss Defendant Sica's "hostility and demeaning behavior towards women in the office."  (Id. ¶ 51.)  Plaintiff alleges that Defendant Charpentier informed her that "[Defendant] Sica views women under his command as subordinate without regard to their rank or position."  (Id.)  When Defendant Charpentier discussed the issue with Defendant Sica, Plaintiff alleges that Defendant Sica said "that bitch crossed the line and she is out of here" or words to that effect.  (Id. ¶ 53.)  Plaintiff

complained of the work environment to Hintz; however, Military Personnel Services did not take action in response to Plaintiff's complaint of a hostile work environment.  (Id. ¶¶ 51, 54.)

Plaintiff was terminated on July 19, 2010.  (Id. ¶¶ 59-60.)  Plaintiff alleges that on July 20, 2010, Defendant Dwyer stated that Plaintiff was fired because she was having an affair with Captain Quinn, she refused to work with Defendant Sica, and she was belligerent.  (Id. ¶ 56.)

On July 5, 2011, Plaintiff initiated this action, and on September 20, 2011, Plaintiff filed an amended complaint alleging four counts against her former employer and supervisors: (1) a state-law claim for intentional interference with contractual relations against Defendants Dwyer, Charpentier, and Sica; (2) a state-law claim for defamation against Defendants Dwyer, Charpentier, and Sica; (3) claims pursuant to 42 U.S.C. § 1983 against all Defendants for violations of Plaintiff's constitutional rights to free speech, due process, and equal protection; and (4) claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., against all Defendants.  (Doc. No. 12.)  The National Guard Defendants filed a motion to dismiss the amended complaint on October 6, 2011.  (Doc. No. 15.)  Defendants Military Personnel Services and Tipa also filed a motion to dismiss that same day.  (Doc. No. 17.)

## II.    STANDARD OF REVIEW

The Magistrate Act, 28 U.S.C. § 636, and Federal Rule of Civil Procedure 72(b), provide that any party may file written objections to a magistrate's proposed findings and recommendations.  In deciding whether to accept, reject, or modify a Report and Recommendation, a Court must make a de novo determination of those portions of the Report and Recommendation to which objection is made.  28 U.S.C. § 636(b)(1).

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is proper

when the defendants are entitled to judgment as a matter of law.  See Markowitz v. Ne. Land

Co., 906 F.2d 100, 103 (3d Cir. 1990).  To avoid dismissal, the complaint must contain

allegations sufficient to "raise a right to relief above the speculative level, on the assumption that

all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 555 (2007).  Essentially, a plaintiff must "set forth sufficient

information to outline the elements of his claim or to permit inferences to be drawn that these

elements exist."  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).  Put

otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is

facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  A court, however, "need not credit a complaint's

'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  Morse v. Lower

Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (quoting In re Burlington Coat Factory Sec.

Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

## III.   DISCUSSION

In her Report and Recommendation, Magistrate Judge Methvin recommended that the

motions to dismiss be granted in part and denied in part.  (Doc. No. 25.)  On June 13, 2012, the

National Guard Defendants filed objections to the Report and Recommendation, and on June 15,

2012, Defendant Military Personnel Services filed an objection.  (Doc. Nos. 27, 28.)  Plaintiff

did not file any objections to the Report and Recommendation.  The Court will address each of

Magistrate Judge Methvin's recommendations in turn.

### A.   State Law Claims

First, Magistrate Judge Methvin found that sovereign immunity did not apply to

Plaintiff's state law claims.  (Doc. No. 25 at 15-16.)  In her amended complaint, Plaintiff brings

state law claims against Defendants Dwyer, Charpentier, and Sica for intentional interference

with contractual relations and defamation.  (Doc. No. 12 ¶¶ 61-69).  In her claim for intentional

interference with contractual relations, Plaintiff alleges that Defendants Dwyer, Charpentier, and

Sica "improperly sought to and ultimately succeeded in inducing [her] civilian employer,

[Military Personnel Services], to fire her from her position" and that these "actions were

unfounded."  (Doc. No. 12 ¶¶ 63-64.)  Plaintiff also alleges that these actions "cannot be said to

have been in the best interests of [the National Guard]" because they were "willful, malicious,

reckless or oppressive."  (Id. ¶ 64.)  In her defamation claim, Plaintiff alleges that Defendants

Dwyer, Charpentier, and Sica "by their derogatory and defamatory words and language," which

were published to third persons, including Military Personnel Services and persons within the

National Guard, "adversely affected [her] reputation . . . and ultimately led to her dismissal from

her civilian employment with [Military Personnel Services]."  (Id. ¶¶ 66-68.)

        The National Guard Defendants moved to dismiss these state law claims, arguing that the

claims are barred by the doctrine of sovereign immunity.  (Doc. No. 5 at 5.)  Magistrate Judge

Methvin found that sovereign immunity did not apply to Plaintiff's intentional interference with

contractual relations claim, and recommended that the motion to dismiss that claim be denied.

(Doc. No. 25 at 15.)  With respect to Plaintiff's defamation claim, Magistrate Judge Methvin also

found that sovereign immunity did not apply and recommended that the motion be denied with

respect to Defendants Dwyer and Charpentier.  However, Magistrate Judge Methvin

recommended that Plaintiff's defamation claim be dismissed without prejudice as to Defendant

Sica, as Plaintiff did not allege sufficient facts to support a defamation claim against him.  (Id. at

15-16.)  The National Guard Defendants objected to Magistrate Judge Methvin's

recommendation, arguing that the National Guard employees are entitled to sovereign immunity

because their action fell within the scope of their employment.  (Doc. No. 27 at 8-15.)

  Pennsylvania's doctrine of sovereign immunity bars damage claims for state law torts

against "the Commonwealth, and its officials and employees acting within the scope of their

duties."  1 Pa. Cons. Stat. § 2310.  The statute further provides that these actors shall "remain

immune from suit except as the General Assembly shall specifically waive the immunity."  Id.

Sovereign immunity is waived when the cause of action falls within one of only nine "strictly

construed and narrowly interpreted" exceptions.  Brown v. Blaine, 833 A.2d 1166, 1173 (Pa.

Commw. Ct. 2003) (citing Bufford v. Pa. Dep't of Transp., 670 A.2d 751 (Pa. Commw. Ct.

1996)).  One such exception is National Guard activities, which are "acts of a member of the

Pennsylvania military forces."  42 Pa. Cons. Stat. § 8522(b)(8).  Furthermore, the defense of

sovereign immunity cannot be raised when "the individual's conduct falls outside the scope of

the employee's employment."    Johnson v. Townsend, 314 F. App'x 436, 439 (3d Cir. 2008).

Conduct of a state official or employee "is within the scope of employment if, but only if: (a) it

is of the kind he is employed to perform; (b) it occurs substantially within the authorized time

and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the

[Commonwealth]."  Restatement 2d Agency § 228;  Aliota v. Graham, 984 F.2d 1350, 1358 (3d

Cir. 1993) (predicting that the Pennsylvania Supreme Court would adopt the test set forth in

Restatement 2d Agency § 228).  "[W]illful misconduct does not vitiate a Commonwealth

employee's immunity because sovereign immunity protects a Commonwealth employee acting

within the scope of his or her employment from liability, even for intentional acts which cause

emotional distress." <u>Holt v. Nw. Pa. Training P'ship Consortium, Inc.</u>, 694 A.2d 1134, 1140 (Pa.

Commw. Ct. 1997) (citing <u>Faust v. Dep't of Revenue</u>, 592 A.2d 835 (Pa. Commw. Ct. 1991)).

Plaintiff argues that Defendants Dwyer, Charpentier, and Sica's actions were outside the

scope of their military employment.  With respect to her intentional interference with contractual

relations claim, Plaintiff alleges that Defendants Dwyer, Charpentier, and Sica knowingly and

intentionally interfered with her contractual relations with Military Personnel Services without

justification, thereby exceeding the scope of their employment.  (Doc. No. 12 ¶ 64.)  Plaintiff

alleges that these actions were not in the best interest of the National Guard.  (<u>Id.</u>)  Therefore,

viewed in the light most favorable to Plaintiff, Plaintiff's allegations are sufficient to support a

finding that the Defendants' actions were not motivated by a desire to serve the National Guard

and were not the kind of actions that the Defendants were employed to perform.  Thus, Plaintiff

has alleged sufficient facts to survive the motion to dismiss her intentional interference with

contractual duties claim pursuant to the sovereign immunity doctrine.

Plaintiff has also alleged sufficient facts to support a finding that her defamation claim is

not barred by the sovereign immunity doctrine.  Plaintiff has alleged that "defendants by their

derogatory and defamatory words and language adversely affected plaintiff's reputation," by

publishing defamatory remarks to third persons.  (Doc. No. 12 ¶¶ 66-67.)  Plaintiff further

alleges that the defamatory communications "were of a purely private concern."  (<u>Id.</u> ¶ 69.)  In

the body of her amended complaint, Plaintiff alleges that Defendants Dwyer and Charpentier

circulated rumors insinuating that Plaintiff was having an affair with Captain Quinn.  The

National Guard Defendants argue that the allegations of Plaintiff's complaint reflect that

Defendants Dwyer and Charpentier were acting within the scope of their employment by

reporting a potential extramarital affair between Plaintiff and her commanding officer.  (Doc. No. 27 at 12.)  However, the Plaintiff's allegations are sufficient to support an inference that the allegedly defamatory statements were not made to serve the National Guard and were not the kind of actions that the Defendants were employed to perform.  Rather, Plaintiff's allegations support an inference that the Defendants circulated rumors for purely personal reasons unrelated to their employment.  Thus, Defendants Dwyer and Charpentier have not established that they are entitled to sovereign immunity, and the Court will adopt Magistrate Judge Methvin's recommendation to deny the motion to dismiss Plaintiff's state law claims pursuant to the doctrine of sovereign immunity.

However, while Plaintiff has alleged that Defendants Dwyer and Charpentier circulated rumors about her, she has not alleged facts sufficient to support a defamation claim against Defendant Sica.  Magistrate Judge Methvin recommended that Plaintiff's defamation claim against Defendant Sica be dismissed without prejudice, and Plaintiff has not objected to this recommendation.  Accordingly, the Court will adopt Magistrate Judge Methvin's recommendation, and dismiss Plaintiff's defamation claim against Defendant Sica without prejudice.

## B.      Federal Civil Rights Claims

Next, Plaintiff alleges several constitutional violations, and seeks to recover under 42 U.S.C. § 1983.  Specifically, Plaintiff alleges that Defendants National Guard, Dwyer, Charpentier, Sica, Military Personnel Services, and Tipa violated her rights to freedom of speech, substantive due process, and her protected property interests in violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution.  (Doc. No. 12 ¶¶ 70-75.)

#### 1.    *Section 1983 Requirements*

To state a claim under Section 1983, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under the color of state law." Moore v. Tartler, 983 F.2d 682, 685 (3d Cir. 1993).  Neither states, state agencies, nor state employees sued in their official capacities qualify as "persons" under Section 1983.  Hafer v. Melo, 502 U.S. 21, 31 (1991).

Magistrate Judge Methvin found that Plaintiff's amended complaint fails to state a claim against Defendant National Guard, and Defendants Dwyer, Charpentier, and Sica in their official capacities under Section 1983 because these parties are not "persons" for purposes of Section 1983 liability.  (Doc. No. 25 at 17-18.)  Thus, Magistrate Judge Methvin recommended that Plaintiff's Section 1983 claim be dismissed against these parties.  Plaintiff did not object to the Report and Recommendation.  Finding no error in this recommendation, the Court will dismiss Plaintiff's amended complaint to the extent that it asserts a cause of action under Section 1983 against Defendant National Guard, a state agency, and Defendants Dwyer, Charpentier, and Sica in their official capacities as state employees.

Magistrate Judge Methvin also found that Defendants Military Personnel Services and Tipa are not state actors.  (Doc. No. 25 at 21-22.)  Thus, she recommended that Plaintiff's Section 1983 claim against Defendants Military Personnel Services and Tipa be dismissed.  In determining whether a party is subject to suit under Section 1983, the principal question is whether the alleged act is "fairly attributable to the State." Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) (quoting Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982)).  The fact that a party performs a public function is not dispositive; rather "the question is whether the function

performed has been traditionally the <u>exclusive</u> prerogative of the State." <u>Id.</u> at 842 (internal

quotation marks omitted).  Magistrate Judge Methvin found that, while Defendants Military

Personnel Services and Tipa carried out a government contract with Defendant National Guard,

the personnel support services that they carried out were not functions that were traditionally the

exclusive prerogative of the state.  Plaintiff has not objected to the Report and Recommendation.

Finding no error in Magistrate Judge Methvin's recommendation, the Court will dismiss

Plaintiff's amended complaint to the extent that it brings a Section 1983 claim against

Defendants Military Personnel Services and Tipa.

### 2.      *Merits of Plaintiff's Constitutional Claims*

Having determined that Plaintiff's amended complaint fails to state a Section 1983 claim

against Defendants National Guard, Military Personnel Services, and Tipa, as well as Defendants

Dwyer, Charpentier, and Sica in their official capacities, the Court must determine whether

Plaintiff has stated a claim under Section 1983 against Defendants Dwyer, Charpentier, and Sica

in their individual capacities.  Defendants argue that Plaintiff has failed to allege sufficient facts

to support her Section 1983 claims.  (Doc. No. 15 at 15; Doc. No. 17 at 6.)

### a.      <u>Free Speech</u>

In her amended complaint, Plaintiff alleges several constitutional violations.  First,

Plaintiff alleges that Defendant Dwyer deprived her of "her right to protected free speech in

reporting the overbilling practices of [Military Personnel Services]."[1]  (Doc. No. 12 ¶ 73.)

---

[1] Plaintiff raises her First Amendment claim against Defendants Military Personnel
Services, Tipa, and Dwyer.  However, because the Court has determined that all Section 1983
claims against Defendants Dwyer, Charpentier, and Sica in their official capacities, as well as all
Section 1983 claims against Defendants National Guard, Military Personnel Services and Tipa
must fail as a matter of law, the Court will only address Plaintiff's Section 1983 claims as they
relate to Defendants Dwyer, Charpentier, and Sica in their individual capacities.

Defendants moved to dismiss Plaintiff's free speech claim.  (Doc. No. 15 at 16; Doc. No. 17 at 7.)

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."  Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).  Magistrate Judge Methvin found that Plaintiff did not allege sufficient facts to support a finding that there was a causal link between her reporting the overbilling of Military Personnel Services and her allegedly retaliatory termination.  (Doc. No. 25 at 24.)  Plaintiff merely alleged that she was terminated subsequent to her report of overbilling.  See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997), abrogated on other grounds by Burlington No. & Santa Fe. Ry. Co. v. White, 548 U.S. 53 (2006) ("[T]he mere fact that adverse employment action occurs after [a protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events.")  Magistrate Judge Methvin further noted that Plaintiff did not allege that Defendant Dwyer terminated her.  Plaintiff did not object to the Report and Recommendation.  Thus, the Court will adopt this portion of Magistrate Judge Methvin's Report and Recommendation and dismiss without prejudice Plaintiff's First Amendment claim brought pursuant to Section 1983.

b.    Due Process

Second, Plaintiff alleges that Defendant Dwyer deprived her of her substantive due process rights.  (Doc. No. 12 ¶ 73.)  Defendants moved to dismiss this claim.  (Doc. No. 15 at 19; Doc. No. 17 at 8.)  "To establish a substantive due process claim, a plaintiff must prove that the

12

particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." <u>Chaney v. Street</u>, 523 F.3d 200, 219 (3d Cir. 2008)

Magistrate Judge Methvin found that Plaintiff does not have a property interest in her employment with Military Personnel Services. "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." <u>Elmore v. Cleary</u>, 399 F.3d 279, 282 (3d Cir. 2005) (citing <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 577 (1972)). Pennsylvania is an at-will employment state; thus, not all employees have a property interest in their jobs. <u>Swinehart v.</u> McAndrews, 221 F. Supp. 2d 552, 557 (E.D. Pa. 2002), <u>aff'd</u>, 69 F. App'x 60 (3d Cir. 2003). "The decisional law is clear that an at-will employee does not have a legitimate entitlement to continued employment because he serves solely at the pleasure of his employer." <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 234 (3d Cir. 2006). Thus, Magistrate Judge Methvin recommended that Plaintiff's due process claim be dismissed to the extent that it relates to her property interest in her employment. Plaintiff did not object, and the Court adopts this portion of the Report and Recommendation.

Magistrate Judge Methvin also found that Plaintiff has not pleaded sufficient facts to support a claim for deprivation of her liberty interest, and recommended that Plaintiff's due process liberty interest claim be dismissed without prejudice. "[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." <u>Hill</u>, 455 F.3d at 236. Here, Plaintiff has not alleged the deprivation of some additional right or interest, and has not alleged

sufficient facts to support a finding that she was deprived of "the liberty to pursue a calling or occupation." <u>See</u> <u>Piecknick v. Commonwealth</u>, 36 F.3d 1250, 1259 (3d Cir. 1994). While "[a] public employee who is defamed in the course of being terminated . . . satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost," <u>id.</u> at 238, the same cannot be said for employees of private employers such as Military Personnel Services. <u>See</u> <u>Pendleton v. City of Haverhill</u>, 156 F.3d 57, 63 (1st Cir. 1998) ("violation of constitutional proportions under a 'stigma-plus' theory exists only if, and to the extent that, the opportunities lost are government benefices denied as a result of governmental action"). Thus, the Court will adopt this uncontested portion of Magistrate Judge Methvin's Report and Recommendation, and dismiss Plaintiff's due process liberty interest claim without prejudice.

<u>c.</u>      <u>Equal Protection</u>

Plaintiff also claims that Defendants Charpentier and Sica denied her of her right to equal protection under the Fourteenth Amendment. (Doc. No. 12 ¶ 74.) Defendants moved to dismiss Plaintiff's equal protection claim. (Doc. No. 15 at 20; Doc. No. 17 at 9.) Magistrate Judge Methvin recommended that the Court deny Defendants' motions to dismiss to the extent that they sought to dismiss Plaintiff's equal protection claim against Defendants Charpentier and Sica in their individual capacities. (Doc. No. 25 at 31-32.) The National Guard Defendants object to this recommendation, arguing that Plaintiff has failed to allege sufficient facts to establish a hostile environment. (Doc. No. 27 at 15.)

The Equal Protection Clause of the Fourteenth Amendment provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. "This is essentially a direction that all persons similarly situated should be

14

treated alike." Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 151 (3d Cir.

2005) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). "The

showing required to prove a § 1983 gender discrimination claim is identical to that required by

Title VII." Wood v. Univ. of Pittsburgh, 395 F. App'x 810, 816 (3d Cir. 2010). To state a

hostile work environment claim under Title VII an employee must show that "(1) the employee

suffered intentional discrimination because of [her] sex, (2) the discrimination was pervasive and

regular, (3) the discrimination detrimentally affected the [employee], (4) the discrimination

would detrimentally affect a reasonable person of the same sex in that position, and (5) the

existence of respondeat superior liability." Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007)

(quoting Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001)) (internal quotations marks

omitted). For a Section 1983 claim to survive a motion to dismiss, however, a plaintiff must

allege the defendant's personal involvement "through allegations of personal direction or of

actual knowledge and acquiescence, or through proof of direct discrimination by the supervisor."

Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990) (internal quotation marks

and citations omitted). Specifically, "if a plaintiff proves that management-level employees had

actual or constructive knowledge about the existence of a sexually hostile environment and

failed to take prompt and adequate remedial action, the employer will be liable." Id. at 1486.

"[T]he totality of the circumstances must be considered, including the frequency of the

discriminatory conduct, its severity, whether it [was] physically threatening or humiliating or a

mere offensive utterance, and whether it reasonably interfere[d] with an employee's work

performance." Harris v. SmithKline Beecham, 27 F. Supp. 2d 569, 577 (E.D. Pa. 1998) (citing

Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).

In her amended complaint, Plaintiff alleges that due to Defendants' actions and inactions, she was denied equal work opportunities, income in wages, and employment and other benefits due solely to her sex.  (Doc. No. 12 ¶ 77.)  Specifically, Plaintiff alleges that Defendant Sica created a hostile and harassing work environment, refused to communicate with female employees, spoke derogatorily of female employees, and engaged in lewd and lascivious behavior towards female employees.  (Id. ¶¶ 35-53.)  Plaintiff further alleges that when she informed Defendant Charpentier of Defendant Sica's demeaning behavior and hostility towards women, Defendant Charpentier stated that Defendant Sica "views women under his command as subordinate without regard to their rank or position."  (Id. ¶ 51.)  Plaintiff alleges that this conduct took place between July 1, 2010, and July 19, 2010, when she was terminated.

Considering these factual allegations, Magistrate Judge Methvin found that Plaintiff had alleged sufficient facts to state a hostile work environment claim under the Equal Protection Clause against Defendant Sica.  (Doc. No. 25 at 31.)  The Court agrees.  Accepting all of Plaintiff's factual allegations as true and in the light most favorable to Plaintiff, she has alleged sufficient facts to support a finding that she suffered intentional discrimination because of her gender, that the discrimination was pervasive and regular, that the discrimination detrimentally affected her, and that the discrimination would detrimentally affect a reasonable female in Plaintiff's position.

With respect to Defendant Sica, Plaintiff has sufficiently alleged his personal involvement.  Plaintiff has also alleged that Defendant Charpentier was Defendant Sica's supervisor, that he had actual knowledge of Defendant Sica's actions, and that he acquiesced in them.  "Where a supervisor with authority over a subordinate knows that the subordinate is

violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder

may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the

subordinate's conduct." Robinson v. City of Pittsburgh, 120 F.3d 1284, 1294 (3d Cir. 1997).

Because Plaintiff has alleged that she informed Defendant Charpentier of Defendant Sica's

conduct and that the conduct continued after she informed him, and because Plaintiff alleged that

Defendant Charpentier expressed that Defendant Sica is unfamiliar with working with civilians

and female leaders, she has alleged sufficient facts to support a finding that Defendant

Charpentier acquiesced in Defendant Sica's conduct.  Thus, the Court will adopt this portion of

Magistrate Judge Methvin's Report and Recommendation, and deny Defendants' motions to

dismiss Plaintiff's hostile work environment claim under the Equal Protection Clause against

Defendants Sica and Charpentier in their individual capacities.

### C.      Title VII Hostile Environment Claim

Plaintiff's fourth cause of action is a hostile work environment claim under Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., against Defendants Dwyer, Charpentier,

Sica, National Guard, Military Personnel Services and Tipa.  (Doc. No. 12 ¶¶ 76-82.)  In support

of her Title VII claim, Plaintiff alleges that Defendants' actions and inactions in failing to stop

the alleged hostile work environment denied her equal employment opportunities, income in

wages, and employment and other benefits due solely to her sex.  (Id. ¶ 77.)  Plaintiff alleges that

on July 21, 2011, the Equal Employment Opportunity Commission issued a notice of her right to

sue, which she attached to the amended complaint.  (Id. ¶ 81.)  Defendants moved to dismiss

Plaintiff Title VII claim, arguing that it lacks merit and that Plaintiff failed to exhaust her

administrative remedies.  (Doc. No. 15 at 12; Doc. No. 17 at 9.)  Magistrate Judge Methvin

recommended that the Court dismiss Plaintiff's Title VII claim as to the individual defendants

Dwyer, Sica, Charpentier, and Tipa, because Title VII does not authorize liability against an

individual supervisor or employee.  (Doc. No. 25 at 39.)  However, Magistrate Judge Methvin

recommended that the Court deny Defendants' motions to dismiss Plaintiff's Title VII claim

against Defendants National Guard and Military Personnel Services.  (Id.)  Defendants objected,

arguing that Plaintiff failed to plead sufficient facts to support a hostile work environment claim.

(Doc. No. 27 at 15; Doc. No. 30 at 8.)

First, Magistrate Judge Methvin found that Plaintiff alleged sufficient facts to support a

finding that she exhausted her administrative remedies.  (Doc. No. 25 at 32-36.)  Plaintiff

included her right to sue letter as an attachment to her amended complaint, but did not make any

allegations as to the substance of her EEOC complaint.  (Doc. No. 12-1.)  Plaintiff alleged that

she filed charges of employment discrimination with the EEOC within 180 days of some of the

occurrences of which she complains.  (Doc. No. 12 ¶ 3.)  At this stage, the Court finds that

Plaintiff has alleged sufficient facts to support a finding that she exhausted her administrative

remedies.  Thus, the Court will adopt this uncontested portion of Magistrate Judge Methvin's

Report and Recommendation.

Turning to the merits, Magistrate Judge Methvin found that Plaintiff stated a claim for

hostile work environment under Title VII.  (Doc. No. 25 at 38.)  Defendants object, arguing that

Plaintiff has not sufficiently pleaded a hostile work environment.  To state a hostile work

environment claim under Title VII an employee must show that "(1) the employee suffered

intentional discrimination because of [her] sex, (2) the discrimination was pervasive and regular,

(3) the discrimination detrimentally affected the [employee], (4) the discrimination would

detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of respondeat superior liability." Andreoli, 482 F.3d at 643 (quoting Weston, 251 F.3d at 426) (internal quotations marks omitted).  "The showing required to prove a § 1983 gender discrimination claim is identical to that required by Title VII."  Wood, 395 F. App'x at 816.  For the reasons set forth above, the Court finds that Plaintiff has alleged sufficient facts to support a finding that she suffered intentional discrimination because of her gender, that the discrimination was pervasive and regular, that the discrimination detrimentally affected Plaintiff, and that the discrimination would detrimentally affect a reasonable female in Plaintiff's position.

Regarding the fifth factor, the Court finds that Plaintiff has alleged sufficient facts to support a finding that respondeat superior liability exists as to Defendant National Guard, but not as to Defendant Military Personnel Services.  Respondeat superior liability exits in a Title VII claim "where the defendant knew or should have known of the harassment and failed to take prompt remedial action."  Andrews, 895 F.2d at 1486 (quoting Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1316 (11th Cir.1989)).  "Thus, if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment and failed to take prompt and adequate remedial action, the employer will be liable."  Id.  Plaintiff has alleged that she informed Defendant Charpentier, a supervisor at the National Guard, of the allegedly hostile environment.  She further alleged that the hostile conduct continued after she informed Defendant Charpentier, thus, supporting an inference that he failed to take adequate remedial action.  Accordingly, the Court will adopt Magistrate Judge Methvin's recommendation to allow Plaintiff's Title VII hostile environment claim against Defendant National Guard to survive.

However, Defendant Military Personnel Services argues that Plaintiff has failed to demonstrate a factual basis for the existence of respondeat superior for holding Military Personnel Services responsible for Defendant Sica's actions.  (Doc. No. 30 at 20.)  The Court agrees.  Plaintiff has not alleged sufficient facts to support a finding that respondeat superior liability exists against Defendant Military Personnel Services for the acts of Defendant Sica. Plaintiff alleges that she informed Sandy Hintz with Military Personnel Services of the allegedly hostile environment and that Defendant Military Personnel Services did not take any action. (Doc. No. 12 ¶ 54.)  However, Defendant Sica is an employee of Defendant National Guard, not Defendant Military Personnel Services, and Plaintiff has not alleged that Defendant Military Personnel Services had any supervisory control over Defendant Sica.  Thus, the Court declines to adopt Magistrate Judge Methvins' recommendation to deny Defendant Military Personnel Services' motion to dismiss Plaintiff's Title VII claim against it.

Finally, Magistrate Judge Methvin correctly noted that Title VII does not authorize liability against an individual supervisor or employee.  Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996).  Thus, Plaintiff's Title VII claim against Defendants Charpentier, Dwyer, and Tipa must fail.

IV.     CONCLUSION

Upon a de novo review of Magistrate Judge Methvin's Report and Recommendation (Doc. No. 25), the Court will adopt in part the Report and Recommendation.  The Court will grant in part and deny in part Defendants' motions to dismiss (Doc. Nos. 14, 16).  An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KELLY A. SHARP,** | : | |
| **Plaintiff** | : | **No. 1:11-cv-1262** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **PENNSYLVANIA ARMY** | : | **(Magistrate Judge Methvin)** |
| **NATIONAL GUARD, et al.,** | : | |
| **Defendants** | : | |

**ORDER**

**AND NOW**, on this 3rd day of August 2012, **IT IS HEREBY ORDERED** that

Magistrate Judge Methvin's Report and Recommendation (Doc. No. 25) is **ADOPTED IN**

**PART** consistent with the foregoing memorandum, and Defendants' motions to dismiss (Doc.

Nos. 14, 16) are **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  Plaintiff's defamation claim is **DISMISSED WITHOUT PREJUDICE** as against Defendant Sica;

2.  Plaintiff's Section 1983 claims are **DISMISSED WITH PREJUDICE** as against Defendants National Guard, Military Personnel Services, and Tipa, as well as Defendants Dwyer, Charpentier, and Sica in their official capacities;

3.  Plaintiff's First Amendment claim is **DISMISSED WITHOUT PREJUDICE**;

4.  Plaintiff's due process claim is **DISMISSED WITHOUT PREJUDICE**;

5.  Plaintiff's Title VII claim is **DISMISSED WITH PREJUDICE** as against Defendants Dwyer, Sica, Charpentier, and Tipa;

6.  Plaintiff's Title VII claim is **DISMISSED WITHOUT PREJUDICE** as against Defendant Military Personnel Services;

7.  Defendants Tipa and MPSC are **TERMINATED**; and

8.  Defendants' motions are **DENIED** in all other respects.

9.      Plaintiff is granted leave to amend her complaint within fifteen days of the date of
this order.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania