IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELLY A. SHARP, | : | |
|     Plaintiff | : | No. 1:11-cv-1262 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| PENNSYLVANIA ARMY | : | |
| NATIONAL GUARD, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court are two motions to dismiss Plaintiff Kelly A. Sharp's second amended complaint: one by Defendants Pennsylvania Army National Guard, Colonel Cindy Dwyer, Major William Charpentier, and Captain Paolo Sica (collectively "National Guard Defendants") (Doc. No. 34), and one by Defendant Military Personnel Services Corporation (Doc. No. 35). The National Guard Defendants' motion also asks the Court, in the alternative, to convert its motion to a motion for summary judgment. (Doc. No. 37 at 7 n.3.) For the reasons that follow, the Court will convert the National Guard Defendants' motion into a motion for summary judgment, and grant the motion. The Court will deny Defendant Military Personnel Services' motion.

## I.  BACKGROUND

The background of this action is set forth in exhaustive detail in Magistrate Judge Methvin's Report and Recommendation, as well as the Court's memorandum issued on August 3, 2012; however, the Court will briefly summarize the pertinent factual and procedural details.[1]

---

[1] In reviewing the motion to dismiss, the Court will accept Plaintiff's factual allegations as true and will "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

1

On July 5, 2011, Plaintiff initiated this action following her termination from Military Personnel Services Corporation, a military contractor that placed Plaintiff in a post with the Pennsylvania Army National Guard's Family Assistance Centers. (Doc. No. 1.) Plaintiff alleges that during the eleven months that she served as the Family Assistance Center Coordinator, she suffered a hostile work environment, retaliation, defamation, and constitutional deprivations by National Guard members, and that her employer failed to take any action in response to her complaints.

On September 20, 2011, Plaintiff filed an amended complaint alleging four counts against her former employer and supervisors: (1) a state-law claim for intentional interference with contractual relations against the National Guard members (Dwyer, Charpentier, and Sica); (2) a state-law claim for defamation against the National Guard members; (3) constitutional claims pursuant to 42 U.S.C. § 1983 against the National Guard Defendants, Military Personnel Services, and Ronald Tipa (a Military Personnel Services employee), for violations of her constitutional rights to (i) free speech, (ii) due process, and (iii) equal protection of the laws; and (4) claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., against all Defendants. (Doc. No. 12.) Magistrate Judge Methvin issued a Report and Recommendation related to Defendants' motions to dismiss on May 29, 2012, which the Court adopted in part on August 3, 2012. (Doc. Nos. 25, 31.)

In its memorandum and order, the Court dismissed Plaintiff's complaint in part, but granted her leave to amend some portions of her complaint. (Doc. Nos. 31.) Specifically, the Court: (1) dismissed Plaintiff's defamation claim without prejudice as against Defendant Sica for failure to allege sufficient facts related to him; (2) dismissed Plaintiff's Section 1983 claims with prejudice as against Defendants National Guard, Military Personnel Services, and Tipa, as well

as against Defendants Dwyer, Charpentier, and Sica in their official capacities, as those defendants are not proper defendants under Section 1983; (3) dismissed Plaintiff's First Amendment claim without prejudice for failure to allege a causal link between her speech and her termination; (4) dismissed Plaintiff's due process claim without prejudice for failure to allege a property right to her employment or a "stigma" to her reputation; (5) dismissed Plaintiff's Title VII claim with prejudice as against Defendants Dwyer, Sica, Charpentier, and Tipa, as they are improper defendants under Title VII; and (6) dismissed Plaintiff's Title VII claim without prejudice as against Defendant Military Personnel Services for failing to allege sufficient facts to support a finding of respondeat superior. (Doc. No. 31.) The Court allowed Plaintiff's state-law claim for intentional interference with contractual relations to survive, as well as her defamation claim against Defendants Dwyer and Charpentier. Additionally, the Court allowed Plaintiff's Section 1983 claim for a hostile work environment to survive as against Defendants Dwyer, Charpentier, and Sica in their individual capacities, along with her Title VII claim against the National Guard.

Because the Court dismissed some of Plaintiff's claims without prejudice to her right to endeavor to cure the defects noted in the memorandum and order, Plaintiff filed a second amended complaint on August 20, 2012 . (Doc. No. 32.) Plaintiff's second amended complaint is nearly identical to her prior complaint, setting forth the same four causes of action raised in her prior complaint but adding some additional factual details. On September 4, 2012, Defendants moved to dismiss the second amended complaint. (Doc. Nos. 34, 35.) For the reasons that follow, the Court will grant the National Guard Defendants' motion and deny Military Personnel Services' motion.

3

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is proper when the defendants are entitled to judgment as a matter of law. See Markowitz v. Ne. Land Co., 906 F.2d 100, 103 (3d Cir. 1990). To avoid dismissal, the complaint must contain allegations sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Essentially, a plaintiff must "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

"To the extent that the court considers evidence beyond the complaint in deciding a Rule 12(b)(6) motion, it is converted to a motion for summary judgement." Anjelino v. N.Y. Times Co., 200 F.3d 73, 88 (3d Cir. 1999). In such an instance , all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. The Third Circuit has held that "it is reversible error for a district court to convert a motion under Rule 12(b)(6) or Rule 12(c) into a motion for summary judgment unless the court provides notice of its intention to

4

convert the motion and allows an opportunity to submit materials admissible in a summary judgment proceeding or allows a hearing." Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989). "However, motions for summary judgment that are presented to the court as motions in the alternative constitute sufficient notice to a non-moving party that the court may convert a motion to dismiss into a motion for summary judgment." Carver v. Plyer, 115 F. App'x 532, 536 (3d Cir. 2004) (citing Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996)).

### B. Motion for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the

5

motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322.

With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III. DISCUSSION

Plaintiff's second amended complaint sets forth four causes of action against her former employer and supervisors: (1) a state-law claim for intentional interference with contractual relations against Defendants Dwyer, Charpentier and Sica; (2) a state-law defamation claim against Defendants Dwyer, Charpentier, and Sica; (3) a claim pursuant to 42 U.S.C. § 1983 against Defendants Dwyer, Charpentier, and Sica, alleging that Defendants violated her right to free speech, her liberty interest as an employee, and her right to equal protection of the laws; and (4) a claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.,

against Defendants National Guard and Military Personnel Services. (Doc. No. 32.) The National Guard Defendants move to dismiss some of Plaintiff's federal claims, including: (1) Plaintiff's Title VII claim, arguing that she did not properly exhaust her administrative remedies; (2) Plaintiff's Section 1983 First Amendment claim, arguing that she failed to establish a causal link between her report of overbilling and her termination; and (3) Plaintiff's Section 1983 substantive due process claim, arguing that she did not allege sufficient facts to support a finding that she was deprived of a liberty interest. (Doc. No. 34.) Defendant Military Personnel Services moves to dismiss Plaintiff's Title VII hostile work environment claim, arguing that she failed to allege sufficient facts to support such a claim. (Doc. No. 35.) The Court will address each argument separately.

### A. Title VII Claim

#### 1. Exhaustion of Administrative Remedies

First, the National Guard Defendants argue that Plaintiff has not exhausted her administrative remedies, as required under Title VII. (Doc. No. 37 at 4-7.) Specifically, the National Guard Defendants argue that Plaintiff did not list the National Guard anywhere on her charge of discrimination filed with the Equal Employment Opportunity Commission (EEOC) or the Pennsylvania Human Rights Commission (PHRC), and instead listed Military Personnel Services as her employer. In response, Plaintiff asserts that while she did not name the National Guard in her charge of discrimination, she named Defendants Sica and Charpentier in the body of the complaint. (Doc. No. 39 at 12.) She further argues that the National Guard and Military Personnel Services have a commonality of interest, and that the National Guard was on notice of her charge of discrimination.

7

Title VII aims to prevent employers from discriminating against employees on the basis of sex, as well as race, color, religion, and national origin. 42 U.S.C. § 2000e-2 et seq. To further this goal, Congress created a remedial scheme by which an aggrieved party must file a complaint with the state anti-discrimination agency, such as the PHRC, followed by a requirement that the individual also file a claim with the EEOC within 300 days of the allegedly discriminatory action. 42 U.S.C. §§ 2000e-5(b)-(e); West v. Phila. Elec. Co., 45 F.3d 744, 754 n.8 (3d Cir. 1995) ("The 300-day period applies where the plaintiff has initially instituted proceedings with a State or local agency. Otherwise, the applicable period is 180 days."); Serendiski v. Clifton Precision Prods. Co., 776 F.2d 56, 63 (3d Cir. 1985). Only after those steps have been completed may an individual file suit in federal court. West, 45 F.3d at 754. In order to exhaust these remedies as to a particular defendant, that defendant ordinarily must be named in the plaintiff's EEOC charge of discrimination. Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh, Pa., 903 F.2d 243, 251 (3d Cir. 1990) ("A Title VII action ordinarily may be brought only against a party previously named in an EEOC action.") (citing 42 U.S.C. § 2000e-5(f)(1)). However, the Third Circuit recognizes an exception to this general rule where the unnamed party "received notice and when there is a shared commonality of interest with the named party." Id. at 252; see also DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 431-32 (E.D. Pa. 2007) (permitting a Title VII action to proceed against a party named in the body of the EEOC complaint but not served by the EEOC). "In Title VII actions, failure to exhaust administrative remedies is an affirmative defense in the nature of statute of limitations." Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).

Here, Plaintiff included her right-to-sue letter issued by the EEOC as an attachment to

her second amended complaint, but she did not attach her EEOC charge of discrimination or make any allegations regarding the substance of the charge. (Doc. No. 32 ¶ 88.) To properly consider this issue, the Court will look beyond the face of the complaint and entertain the motion as one for summary judgment. See Fed. R. Civ. P. 12(d). Because Defendant Military Personnel Services presented its motion as a motion to dismiss or, in the alternative, for summary judgment, Plaintiff had sufficient notice that the Court may convert the motion. See Carver, 115 F. App'x at 536 (3d Cir. 2004). In her EEOC charge of discrimination, Plaintiff averred that she was hired by Military Personnel Services on October 3, 2009, and that she experienced a hostile work environment due to Defendant Sica's conduct towards her and other women in the office. (Doc. No. 37-1.) She noted that she met with Defendant Charpentier regarding Defendant Sica's conduct, but that he was not able to help her resolve her grievance. Ultimately, she complained that she was discharged by Sandy Hintz, an employee of Military Personnel Services, and that she was discriminated against by Military Personnel Services because of her gender, and in retaliation for complaining about her treatment. (Id.) While Defendants Charpentier and Sica are referenced in the charge, the gravamen of the complaint is that Military Personnel Services terminated her in violation of Title VII. The National Guard is not referenced anywhere in the charge of discrimination, nor in the right-to-sue letter that Plaintiff attached to her second amended complaint. (Doc. No. 32-1.)

The exception to the general rule that a defendant must be named in an EEOC charge where the unnamed party received notice and has a commonality of interest with the named party is not applicable in this case. See Schafer, 903 F.2d at 352. In determining whether to excuse a plaintiff's failure to name a party before the EEOC, the Third Circuit has guided district courts to

9

consider four non-exhaustive factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Glus v. G. C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977). Here, Plaintiff could have ascertained the identity of the National Guard, and recognized that it is a separate organization from Military Personnel Services, the corporation that employed her. Moreover, under the circumstances, the interests of Military Personnel Services and the National Guard are not so similar that it would be unnecessary to include the National Guard in EEOC proceedings to obtain voluntary conciliation and compliance. The interests of these two entities are not aligned; Defendant Military Personnel Services argues that Defendant Sica's actions cannot be imputed to it because he was a National Guard employee, rather than a Military Personnel Services employee. (See Doc. No. 38 at 20.) Because Defendant National Guard was excluded from the EEOC proceedings, it would not have been possible for it to avoid litigation through voluntary conciliation in the proceedings. Under these circumstances, the Court finds that the general rule that a plaintiff may not bring a discrimination charge against a defendant that was not named in the EEOC charge applies in this case, and that the exception is not applicable. Thus, the Court will grant Defendant National Guard's motion for summary judgment with respect to Plaintiff's Title VII claim against it.

### 2. Elements of a Hostile Work Environment Claim

Defendant Military Personnel Services also moves to dismiss Plaintiff's Title VII claim. Specifically, Military Personnel Services argues that Plaintiff has failed to meet the standard for stating a hostile work environment claim, and that she failed to allege sufficient facts to impute it with respondeat superior liability. (Doc. No. 38.) In response, Plaintiff argues that her allegations are sufficient to demonstrate a hostile work environment, and that Military Personnel Services should be liable under the joint employer theory. (Id. at 14-15.)

In support of her Title VII claim, Plaintiff alleges that Defendants' actions and inactions in failing to stop the alleged hostile work environment denied her equal employment opportunities, income in wages, and employment and other benefits due solely to her sex. (Doc. No. 32 ¶ 84.) To state a hostile work environment claim under Title VII, an employee must show that "(1) the employee suffered intentional discrimination because of [her] sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the [employee], (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of respondeat superior liability." Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007) (quoting Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001)) (internal quotations marks omitted). "The showing required to prove a § 1983 gender discrimination claim is identical to that required by Title VII." Wood v. Univ. of Pittsburgh, 395 F. App'x 810, 816 (3d Cir. 2010). In the Court's August 3, 2012 order, the Court held that Plaintiff had alleged sufficient facts to satisfy the first four of these elements. (Doc. No. 31 at 19.) Plaintiff's amendments to her complaint do not impact this finding.

Plaintiff has alleged that due to Defendants' actions and inactions, she was denied equal

work opportunities, income in wages, and employment and other benefits due solely to her sex. (Doc. No. 32 ¶ 84.) Specifically, Plaintiff alleges that Defendant Sica created a hostile and harassing work environment, refused to communicate with female employees, spoke derogatorily about female employees, and engaged in lewd and lascivious behavior towards them. Plaintiff further alleges that when she informed Defendant Charpentier of Defendant Sica's demeaning behavior and hostility towards women, Defendant Charpentier stated that Defendant Sica "views women under his command as subordinate without regard to their rank or position." Plaintiff alleges that this conduct took place between July 1, 2010, and July 19, 2010, the date on which she was terminated. As the Court held in its August 3, 2012 order, these factual allegations are sufficient to support a finding that she suffered intentional discrimination because of her gender, that the discrimination was pervasive and regular, that the discrimination detrimentally affected her, and that the discrimination would detrimentally affect a reasonable female in Plaintiff's position.

In the Court's August 3, 2012 order, the Court found that Plaintiff had alleged sufficient facts to impute <u>respondeat superior</u> liability on the National Guard for a hostile work environment claim, but that she had not alleged sufficient facts to support a finding that <u>respondeat superior</u> liability exists as to Military Personnel Services. (Doc. No. 31 at 19-20.) However, Plaintiff has amended her complaint, adding sufficient factual details to support a finding that Military Personnel Services failed to take prompt remedial action in response to Plaintiff's complaints about the National Guard members.

<u>Respondeat superior</u> liability exits in a Title VII claim "where the defendant knew or should have known of the harassment and failed to take prompt remedial action." <u>Andrews v.</u>

City of Phila., 895 F.2d 1469, 1486 (3d Cir. 1990) (quoting Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1316 (11th Cir.1989)). "Thus, if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment and failed to take prompt and adequate remedial action, the employer will be liable." Id.

Defendant Military Personnel Services argues that Sharp has failed to demonstrate that it had any authority over National Guard members. (Doc. No. 38 at 20.) However, in her amended complaint, Plaintiff has made a number of allegations that support a finding that Military Personnel Services exercised enough control over the National Guard members and Plaintiff's work environment such that it could have taken remedial action to cure the allegedly hostile environment. For example, on one occasion, Plaintiff alleges that a Military Personnel Services employee exercised supervisory control over a National Guard member by directing him to cease investigating a billing issue, and that he acquiesced in the request. (Doc. No. 32 ¶¶ 22-24.) On a separate occasion, Plaintiff alleges that she complained to Military Personnel Service about Defendant Sica's attempt to move a Military Personnel Services employee from an enclosed office space to the reception area. (Id. ¶¶ 42-44.) In response to her complaint, Military Personnel Services directed Plaintiff to prevent Defendant Sica from moving the employee, and he acquiesced. (Id. ¶ 44.) In contrast, when she complained of the allegedly hostile environment created by Defendants Sica and Dwyer, Plaintiff alleges that Military Personnel Services took no action. (Id. ¶ 58.) Shortly thereafter, Plaintiff alleges that Military Personnel Services terminated her at Defendant Dwyer's request. (Id. ¶ 66.)

At this stage in the litigation, these allegations are sufficient to support a finding that

13

Defendant Military Personnel Services "failed to take prompt and adequate remedial action" with respect to Defendants Sica and Dwyer. See Andrews, 895 F.2d at 1486. Accepting Plaintiff's allegations as true, she has "set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler, 578 F.3d at 210 (quoting Iqbal, 556 U.S. at 678). The allegations support an inference that Military Personnel Services exercised some control over the National Guard members, at least with respect to their dealings with Military Personnel Services employees. Therefore, Plaintiff has satisfied her burden of alleging sufficient facts to support a finding of respondeat superior liability as to Defendant Military Personnel Services, and the Court will deny Military Personnel Services' motion to dismiss Plaintiff's Title VII hostile work environment claim.[2]

### B. Free Speech Claim

Next, the National Guard Defendants move to dismiss Plaintiff's First Amendment claim. (Doc. No. 37 at 7.) In her second amended complaint, Plaintiff alleges that Defendant Dwyer deprived her of "her right to protected free speech in reporting the overbilling practices of [Military Personnel Services]." (Doc. No. 12 ¶ 73.) "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2)

---

[2] In her opposition to Defendant Military Personnel Services' motion to dismiss, Plaintiff argues that Military Personnel Services and the National Guard are joint employers. Indeed, when "two entities exercise significant control over the same employees," a joint employer relationship may exist for purposes of determining whether an employer-employee relationship exists between a plaintiff and defendant in a Title VII case. Graves v. Lowery, 117 F.3d 723, 727 (3d Cir. 1997). However, this doctrine is not applicable in determining whether respondeat superior liability exists for a military contractor in a hostile work environment claim related to the alleged conduct of National Guard employees. The joint employer doctrine relates to whether a defendant should be considered an "employer" subject to the requirements of Title VII, even where the plaintiff officially works for another employer. Whether Plaintiff was an employee of Defendant Military Personnel Services is not at issue in this case. Thus, the Court does not rely on the joint employer doctrine in reaching its determination.

14

retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). On August 3, 2012, the Court dismissed Plaintiff's First Amendment claim contained in her first amended complaint without prejudice, because she had not alleged sufficient facts to support a finding that there was a causal link between her report of overbilling and her allegedly retaliatory termination, and because she had not alleged that Defendant Dwyer terminated her. (Doc. No. 31 at 12.) She has not cured these defects in her second amended complaint.

In her second amended complaint, Plaintiff alleges that in April 2010, she reported to Sandy Hintz that Military Personnel Services was overbilling the National Guard. (Doc. No. 32 ¶¶ 20-21.) She further alleges that Ms. Hintz informed her and Captain Quinn that Mr. Tipa would directly address the issue with Defendant Dwyer and Plaintiff, and that Captain Quinn did not need to pursue the matter. (Id. ¶ 22.) Ms. Hintz later informed Captain Quinn to make no further investigations into the overbilling. (Id. ¶ 23.) Plaintiff further alleges that rumors of an extramarital affair began to surface a few weeks after she reported the billing irregularities, and that Defendant Dwyer had Military Personnel Services terminate her on July 19, 2012. (Id. ¶¶ 30, 66.) The reason given to Plaintiff as to why she was terminated was that the National Guard "lost confidence in her abilities to perform her duties." (Id. ¶ 67.)

While Plaintiff has alleged a link between Defendant Dwyer and her ultimate termination, she has not sufficiently alleged a causal link in her report of overbilling and her ultimate termination. Several months passed after Plaintiff alleged that Military Personnel Services was overbilling the National Guard before she was terminated; thus, the report of

15

overbilling was temporally remote from her eventual termination. "[T]he mere fact that adverse employment action occurs after [a protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997), abrogated on other grounds by Burlington No. & Santa Fe. Ry. Co. v. White, 548 U.S. 53 (2006).

Plaintiff has not sufficiently alleged a causal link to support a First Amendment claim. Plaintiff was given leave to amend her complaint to cure this defect, and has failed to do so. Further leave to amend would be futile, because Plaintiff has demonstrated that she is unable to establish the requisite causal link. Thus, the Court will dismiss Plaintiff's First Amendment claim with prejudice.

### C. Due Process Liberty Interest Claim

Next, the National Guard Defendants move to dismiss Plaintiff's substantive due process claim, arguing that Plaintiff has failed to allege sufficient facts to support a finding that she was deprived of a liberty interest. (Doc. No. 37 at 12.) In response, Plaintiff asserts that defamation can implicate due process, and that Defendants Dwyer and Sica defamed her. (Doc. No. 39 at 14.) Specifically, she asserts that Defendant Dwyer told Military Personnel Services and Mr. Tipa that Plaintiff was aggressive, hostile, and otherwise an unsatisfactory employee, and that Defendant Sica sent numerous emails to Defendant Dwyer and Plaintiff's subordinates calling her a terrible employee who was hostile, degrading and unable to work with others. (Id.)

In her second amended complaint, Plaintiff alleges that Defendant Dwyer "denied her protected liberty interests as an employee of [Military Personnel Services] and a quasi employee of the [National Guard]." (Doc. No. 32 ¶ 80.b.) To state a proper claim for a violation of her

16

liberty interest in reputation, Plaintiff must allege sufficient facts to satisfy the "stigma plus" test. See Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 1996). "In the public employment context, the 'stigma plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." Id. "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'" Id. "To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statements(s) (1) were made publicly and (2) were false." Hill, 455 F.3d at 236 (citations omitted). In order to be considered stigmatizing, the statements must "call into question plaintiff's good name, reputation, honor, or integrity . . . [or] denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004)) (internal citations and quotation marks omitted). "[C]harges of incompetence or inability to get along with others" do not implicate a liberty interest. Wheaton v. Webb-Petett, 931 F.2d 613, 617 (9th Cir. 1991).

Here, as the Court explained in its August 3, 2012 order, Plaintiff has not sufficiently alleged either the "stigma" or the "plus." Pennsylvania is an at-will employment state; thus, not all employees have a property interest in their jobs. Swinehart v. McAndrews, 221 F. Supp. 2d 552, 557 (E.D. Pa. 2002), aff'd, 69 F. App'x 60 (3d Cir. 2003). "The decisional law is clear that an at-will employee does not have a legitimate entitlement to continued employment because he serves solely at the pleasure of his employer." Hill, 455 F.3d at 234. While "[a] public

17

employee who is defamed in the course of being terminated . . . satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost," id. at 238, the same cannot be said for employees of private employers such as Military Personnel Services. See Pendleton v. City of Haverhill, 156 F.3d 57, 63 (1st Cir. 1998) ("[V]iolation of constitutional proportions under a 'stigma-plus' theory exists only if, and to the extent that, the opportunities lost are government benefices denied as a result of governmental action . . . ."). While Plaintiff was assigned to work with the National Guard, she was employed by Military Personnel Services. Thus, she was an at-will employee without a property interest in her employment.

Moreover, Plaintiff has not sufficiently alleged that her reputation was stigmatized so as to "effectively put a significant roadblock in [her] continued ability to practice . . . her profession." See Patterson, 370 F.3d at 330. Rather, the statements of which Plaintiff complains appear to be nothing more than "charges of incompetence or inability to get along with others." See Wheaton, 931 F.2d at 617. As with her first amended complaint, Plaintiff has not alleged sufficient facts to support a finding that she suffered a stigma to her reputation, or that she was deprived of some additional right or interest. Plaintiff's due process stigma-plus claim has already been dismissed without prejudice. She failed to amend her complaint to cure the defects noted by the Court. Thus, further leave to amend would be futile. The Court will dismiss Plaintiff's stigma-plus claim with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court will convert the National Guard Defendants' motion to dismiss into one for summary judgment and will grant the motion (Doc. No. 34), and will deny Defendant Military Personnel Services' motion to dismiss (Doc. No. 35).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KELLY A. SHARP, :
    Plaintiff : No. 1:11-cv-1262
     :
v. : (Chief Judge Kane)
     :
PENNSYLVANIA ARMY :
NATIONAL GUARD, et al., :
    Defendants :

## ORDER

**AND NOW**, on this 19th day of April 2013, **IT IS HEREBY ORDERED THAT:**

1. The National Guard Defendants' motion to dismiss, or in the alternative for summary judgment (Doc. No. 34), is **CONVERTED** into a motion for summary judgment, and **GRANTED** as follows:

    A. Plaintiff's First Amendment and Due Process claims against Defendants Dwyer, Charpentier, and Sica are **DISMISSED WITH PREJUDICE**; and

    B. Plaintiff's Title VII claim against Defendant Pennsylvania Army National Guard is **DISMISSED WITH PREJUDICE**.

2. Defendant Military Personnel Services' motion to dismiss (Doc. No. 35) is **DENIED**.

3. A case management telephone conference will be held on April 29, 2013 at 1:30 p.m. Counsel for Plaintiff shall initiate this call. The Court's telephone number is (717) 221-3990.

                                                 S/ Yvette Kane
                                                 Yvette Kane, Chief Judge
                                                 United States District Court
                                                 Middle District of Pennsylvania